1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD BRADDOCK,

Plaintiff,

v.

ZAYCON FOODS, LLC, a Washington limited
liability company; FRANK R. MARESCA, JANE
DOE MARESCA and the marital community
composed thereof; MICHAEL GIUNTA, JANE
DOE GIUNTA and the marital community
composed thereof; MIKE CONRAD, JANE DOE
CONRAD and the marital community composed
thereof; and ADAM KREMIN, JANE DOE
KREMIN and the marital community composed
thereof,

Defendants.

NO. 2:16-cv-1756

**COMPLAINT**

Plaintiff Richard Braddock ("Braddock"), by and through his attorneys, Trachtenberg

Rodes & Friedberg LLP and Ryan, Swanson & Cleveland PLLC, as and for its Complaint

herein, alleges as follows:

## I.     PARTIES

1.     Plaintiff Richard Braddock is a resident of New York, New York.

COMPLAINT - 1

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

2.      Defendant Zaycon Foods, LLC is a Washington limited liability company with its principal place of business at 16201 E. Indiana Avenue, Suite 2150, Spokane, Washington.

3.      Defendants Mike Conrad and Jane Doe Conrad are husband and wife and comprise a marital community.  All of the acts of Mike Conrad were for the benefit of the Conrads and their marital community.  Mike Conrad is a member and a former managing member of Zaycon.  The Conrads reside at 2608 South Viewmont Drive Green Acres, Washington.  The Conrads and their marital community shall collectively be referred to as "Conrad."

4.      Defendants Frank R. Maresca and Jane Doe Maresca are husband and wife and comprise a marital community.  All of the acts of Frank R. Maresca were for the benefit of the Marescas and their marital community.  Frank R. Maresca is a member and the managing member of Zaycon.  The Marescas reside at 186 N. Manhattan Avenue, Massapequa, New York.  The Marescas and their marital community shall collectively be referred to as "Maresca."

5.      Defendants Michael Giunta and Jane Doe Giunta are husband and wife and comprise a marital community.  All of the acts of Michael Giunta were for the benefit of the Giuntas and their marital community.  Michael Giunta is a member and a former managing member of Zaycon.  The Giuntas reside at 5 Sterling Lane, Sands Point, New York.  The Giuntas and their marital community shall collectively be referred to as "Giunta."

6.      Defendants Adam Kremin and Jane Doe Kremin are husband and wife and comprise a marital community.  All of the acts of Adam Kremin were for the benefit of the Kremins and their marital community.  Adam Kremin is a member of Zaycon.  The Kremins

COMPLAINT - 2

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

reside at 23815 East Trent Avenue, Newman Lake, Washington.  The Kremins and their marital community shall collectively be referred to as "Kremin."

## II.   JURISDICTION

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Securities Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Exchange Act and 28 U.S.C. § 1367(a).

## III.   VENUE

9.     Venue is proper in this District pursuant to an agreement between the parties and Section 27 of the Securities Exchange Act and 28 U.S.C. § 1391(b).  The Company is incorporated and headquartered in Washington State, and many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in the State of Washington.

10.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate telephone communications.

## IV.   FACTUAL BACKGROUND

### Braddock

11.     Braddock is the  former president and chief operating officer of Citicorp and its principal subsidiary, Citibank, N.A.; former chairman and chief executive officer of

COMPLAINT - 3

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Priceline.com, which he had joined during its startup phase, which he had taken public and which now has a market capitalization in excess of $70 billion; former chief executive officer of Medco Containment Services, Inc., the largest prescription drug services company, until its acquisition by Merck & Co., Inc. in November 1993 for $6 billion; former chairman and CEO of FreshDirect, a successful online grocer; former principal of Clayton, Dubilier & Rice, Inc., a private equity firm; former chairman of True North Communications Inc.; former chairman of MidOcean Partners, a private investment fund; and a former director of Marriott International, Inc., Cadbury, PLC, Citibank, N.A., Lotus software and several privately held companies.

### Conrad's and Kremin's Prior Violations of the Securities Laws

12.     During or about 2009, the Securities Division of the State of Washington's Department of Financial Institutions ("DFI") commenced an investigation of Conrad and Kremin for their promotion and sale of shares in a company by the name of IFT Holdings, Inc., f/k/a Integrated Fuel Technologies, Inc. ("IFT").

13.     Initially, IFT's business centered on a fuel additive delivery system known as a "fuel doser." Later, IFT focused on the development of a catalyst that removes nitrogen oxides from diesel engine emissions.

14.     On or about November 24, 2009, DFI filed a Statement of Charges and Notice of Intent to Enter Order to Cease and Desist, to Impose Fines and to Recover Costs against Conrad and Kremin for their promotion and sale of shares in IFT.

15.     DFI alleged *inter alia* that: (i) Conrad and Kremin violated RCW 21.20.140, through their offer and/or sale of securities for which there was no registration on file with the Washington State Securities division of DFI; (ii) Conrad and Kremin violated RCW 21.20.040

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1403877.01

by offering or selling said securities while not registered as a salesperson or broker-dealer in the State of Washington; and (iii) Conrad and Kremin made misstatements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of RCW 21.20.010.

16.     Conrad failed to request an administrative hearing on the charges. Kremin waived the right to a hearing and submitted a written statement in lieu of a hearing.

17.     After considering the written statement and reviewing the investigative record, the Securities Administrator found no material grounds for amending the Statement of Charges against Kremin and adopted as final the findings of fact and conclusions of law set forth in the Statement of Charges.

18.     On or about January 26, 2010, DFI filed its Entry of Findings of Fact and Conclusion of Law and Final Order to Cease and Desist as to Kremin.

19.     On or about January 27, 2010, DFI filed its Entry of Findings of Fact and Conclusions of Law and Final Order to Cease and Desist as to Conrad.

20.     The Final Orders required Conrad and Kremin to (i) cease and desist from offering or selling securities in violation of RCW 21.20.140, the securities registration section of the Securities Act of Washington; (ii) cease and desist from acting as unregistered securities broker-dealers or salespersons in violation of RCW 21.20.040, the broker-dealer and securities salesperson registration section of the Securities Act of Washington; and (iii) cease and desist from violating RCW 21.20.010, the anti-fraud section of the Securities Act of Washington.

21.     In addition, Conrad was fined $10,000 by the DFI for his violations of the securities laws.

COMPLAINT - 5

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

22.     Upon information and belief, Conrad has never been registered as a securities broker-dealer or salesperson under RCW 21.20.040.

23.     Upon information and belief, Kremin has never been registered as a securities broker-dealer or salesperson under RCW 21.20.040.

***Conrad's Bankruptcy***

24.     On April 22, 2010, Conrad filed a petition for bankruptcy protection in the Eastern District of Washington, Case No. 10-02447-FPC7.

25.     A significant portion of the creditors listed on Conrad's petition were IFT shareholders who had been defrauded by Conrad's IFT scheme.

26.     On or about May 12, 2010, Conrad filed Schedule F to his bankruptcy petition, which identified Adam Kremin; Campbell, Bissell and Kirby, PLLC; JC Conrad and Frank Maresca – all of whom have been associated with Zaycon – as Creditors Holding Unsecured Nonpriority Claims in the Conrad bankruptcy.

27.     Kremin is listed as a creditor due to his purported investment in IFT.

28.     Campbell, Bissell and Kirby, PLLC ("Campbell Bissell") is listed as a creditor for "unpaid service fees".

29.     JC Conrad is listed as an unsecured nonpriority creditor for a "personal loan" and as an investor in IFT.

30.     Maresca is listed as an unsecured nonpriority creditor.

***Zaycon***

31.     Zaycon was founded on January 9, 2010, by the filing of a Certificate of Formation with the Washington Secretary of State.

COMPLAINT - 6

1403877.01

**RS** Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

32.     The Zaycon business model provides for food items to be shipped directly from the farm to the consumer, thus bypassing the normal maze of wholesalers, distributors and other intermediaries.   Zaycon sources its products directly from the farm in bulk purchases. Refrigerated trucks pick up the goods at the farm and deliver them directly to the consumer at predetermined central locations.  By allowing consumers to buy directly, Zaycon affords them the opportunity to get fresher products, superior quality and lower cost.   Similarly, by eliminating warehousing, Zaycon can offer consumers cost savings of up to 50%.

33.     The Zaycon model had the prospect to revolutionize the grocery market.

34.     However, by mid-2014 the Company was floundering as it was short on capital and experienced leadership.

***Braddock Invests in Zaycon***

35.     In mid-2014, based on the breadth of Braddock's experience and his willingness to invest in start-up ventures, Defendants sought out Braddock and solicited his investment in Zaycon.

36.     Defendants thereupon made a series of fraudulent, reckless and/or negligent misrepresentations and omissions to Braddock.

37.     Certain of these fraudulent, reckless and/or negligent misrepresentations and omissions were contained in the Second Amended and Restated Operating Agreement of Zaycon Foods dated November 1, 2012 (the "Operating Agreement"), a copy of which, as amended, was provided to Braddock during or about the summer of 2014.

38.     The Operating Agreement falsely stated that the number of Class A Units which had been issued to Mike Conrad was 1,375,000.

COMPLAINT - 7

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

39.     The Operating Agreement falsely stated that the number of Class A units which had been issued to Adam Kremin was 1,375,000.

40.     The Operating Agreement falsely stated that the number of Class A Units which had been issued to Frank Maresca was 750,000.

41.     The Operating Agreement falsely stated that the total number of Class A Units which had been issued to Zaycon members was 5,500,000.

42.     The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Conrad.

43.     The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Kremin.

44.     The Operating Agreement failed to disclose that at least 1,750,000 Class A Units had been issued to Maresca.

45.     The Operating Agreement failed to disclose that over 3,000,000 Class A Units had been issued to Giunta.

46.     The Operating Agreement failed to disclose that the total number of Class A Units which had been issued to Zaycon members was over 14,881,000.

47.     Additional fraudulent, reckless and/or negligent misrepresentations and omissions were made in a series of meetings in New York and Colorado and during telephone conversations while Braddock was in New York or Colorado which began during mid-2014 and continued until January 2016.

48.     During these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants, made

COMPLAINT - 8

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1403877.01

misrepresentations, including but not limited to a) that the Individual Defendants and other investors had placed substantial sums into the Company; and b) that an accurate capitalization chart was in the process of being prepared and would be provided to Braddock as soon as it was ready (together with the misrepresentations in the Operating Agreement, the "Misrepresentations").

49.     In addition, during these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants,  failed to inform Braddock that a) DFI had initiated an action against Conrad in 2009; b) DFI had issued a Cease and Desist Order as to Conrad in January 2010; c) DFI had initiated an action against Kremin in 2009; d) DFI had issued a Cease and Desist Order as to Kremin in January 2010; e) Conrad had gone into personal bankruptcy in 2010; f) Maresca had been a creditor in Conrad's bankruptcy proceeding; g) Maresca had been given his interest in the Company for little or no consideration; h) Maresca owned at least 1,000,000 more voting units than the number of voting units set forth in Zaycon's Operating Agreement; i) Kremin had been a creditor in Conrad's bankruptcy proceeding; j) Kremin had been given his interest in the Company for little or no consideration; k) Kremin owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; l) the law firm which prepared Zaycon's Operating Agreement had been a creditor in Conrad's bankruptcy proceeding; m) Conrad had been given his own interest in the Company for little or no consideration; n) Conrad owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; and o) Giunta owned over 3,000,000 voting units which were not referenced in the Operating Agreement (together with the omissions in the

COMPLAINT - 9

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Operating Agreement, the "Omissions").

50.     During the period from mid-2014 through January 2016, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants continued to make the Misrepresentations and Omissions, orally and in writing, to Braddock in connection with solicitations of additional capital and loans from Braddock.

51.     All of the Misrepresentations were intentional or were tantamount to intentional misrepresentations.

52.     All of the Omissions were intentional or were tantamount to intentional omissions.

53.     All of the Misrepresentations were material.

54.     All of the Omissions were material.

55.     On or about August 21, 2014, Braddock invested $1 million dollars in Zaycon and received a) 1,420,987 Class A membership units in Zaycon; and b) an option to purchase 947,325 additional Class A membership units in Zaycon exercisable until December 31, 2025.

56.     Class A membership units in Zaycon are voting units.

57.     On or about December 15, 2014, Braddock invested an additional $500,000 in Zaycon and received 394,741 Class B membership units in Zaycon and an option to purchase 476,190 additional Class B membership units in Zaycon exercisable until December 31, 2024.

58.     Class B membership units in Zaycon are non-voting units.

59.     On or about September 18, 2015, Braddock invested an additional $450,000 in Zaycon and received 478,723 Class A Units in Zaycon.

60.     On or about February 3, 2015, Braddock loaned $500,000 to Zaycon and

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 396,825 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until December 31, 2016.

61.     On or about May 13, 2015, Braddock loaned $252,739.73 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 221,702 Class A Units in Zaycon, exercisable until December 31, 2016.

62.     On or about June 16, 2015, Braddock loaned $500,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 434,783 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until June 16, 2025.

63.     On or about September 24, 2015, Braddock loaned $450,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 489,130 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until September 24, 2025.

64.     On or about December 16, 2015, Braddock loaned $200,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 232,002 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until December 16, 2016.

65.     On or about January 4, 2016, Braddock loaned $300,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 359,411 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until January 4, 2017.

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

66.     On or about July 8, 2015, Braddock exercised his conversion option under his February 3, 2015, $500,000 convertible promissory note and received 409,959 additional Class A membership units in Zaycon.

67.     In sum, from August 2014 through January 2016, Braddock invested $2,450,000 in Zaycon and provided over $1,702,000 of convertible debt to Zaycon.

68.     This made Braddock Zaycon's largest investor by far.

69.     All of Braddock's investments were made in reliance on representations and omissions made in the Operating Agreement and by Maresca, Giunta, Conrad and Kremin, each of whom was acting on behalf of himself and Zaycon and the other Individual Defendants.

70.     All of Braddock's loans were made in reliance on representations and omissions made in the Operating Agreement and by Maresca, Giunta, Conrad and Kremin, each of whom was acting on behalf of himself and Zaycon and the other Individual Defendants.

71.     Braddock would not have made his investments in the absence of the Misrepresentations.

72.     Braddock would not have made his loans if the material information omitted through the Omissions had been disclosed.

73.     Conrad was a seller of securities for the purposes of federal and state law.

74.     Kremin was a seller of securities for the purposes of federal and state law.

75.     Maresca was a seller of securities for the purposes of federal and state law.

76.     Giunta was a seller of securities for the purposes of federal and state law.

***Braddock Takes a More Active Role in Zaycon***

77.     By late September 2015, Braddock began to realize that a number of

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

representations made to him by Maresca, Giunta, Conrad and Kremin, in their individual capacity and on behalf of Zaycon, about the financial and operational strength of Zaycon, had been untrue.

78.     Accordingly, Braddock stepped in to take a more active role in the Company.

79.     In particular, Braddock became Co-managing Member of Zaycon.

80.     The other Co-managing Member of Zaycon during Braddock's tenure was Defendant Maresca.

81.     On or about October 1, 2015, Braddock also became Zaycon's Chief Executive Officer and received 250,000 additional Class A membership units in Zaycon in consideration of his services as CEO pursuant to a written agreement.

82.     Under Braddock's leadership, and with the benefit of the capital infusions received from Braddock, Zaycon's revenues grew from $16 million in 2014 to $25 million in 2015, with 2016 revenues projected at $73 million.

83.     By mid-January 2016, Braddock owned 3,184,669 Class A and 394,741 Class B membership units in the Company.  In addition, he had the option and the means to purchase 947,325 additional Class A and 476,190 Class B membership units in the Company.  He also had the right to convert the Company's indebtedness to him into up to 1,528,226 additional Class A membership units in the Company, as well as to receive certain additional Class A conversion units on account of accrued interest.

***Zaycon Seeks Additional Investments***

84.     Once Braddock had put Zaycon on firm footing, the Company determined that the time was right to seek either additional investment or the sale of the Company.

COMPLAINT - 13

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1403877.01

85.     During or about late 2015 or early 2016, Zaycon retained Vertical Group ("Vertical") to provide investment banking services to the Company.   Michael Shwarts ("Shwarts") was the Vertical investment banker assigned to the engagement.

86.     During or about January 2016, Vertical and Shwarts prepared an investor presentation for Zaycon featuring Braddock as its CEO and Chairman of the Board and highlighting his unique background and qualifications.

87.     Vertical's investor presentation referred to Braddock as the "seasoned" leader of Zaycon's management team, described him as an "experienced CEO in the e-commerce and food industries" and touted both his directly relevant experience as the former chairman and CEO of priceline.com and FreshDirect and his more general high level experience in business and finance, including that gained as the former president and COO of Citicorp and Citibank, N.A.

88.     In addition, the Vertical investor presentation noted that Zaycon's year to year sales growth during the years 2014 to 2016 (the years of Braddock's involvement) were 20.9%, 50.9% and 193.6% (projected), respectively.

89.     On or about April 14, 2016, a private equity firm based in Boston, Massachusetts by the name of Great Hill Partners ("Great Hill") submitted a proposal to make an investment of $25 million to buy into Zaycon at a pre-money enterprise valuation of $30 million.

90.     The Great Hill proposal contemplated that $10 million would be used to buy equity from existing members of Zaycon and that $15 million would be invested directly into the Company.

91.     Braddock advised Defendants and Vertical and Shwarts that he believed that the

1403877.01

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Great Hill deal could be improved through negotiation but that he was strongly in favor of coming to terms with Great Hill.

92.    Braddock further advised Defendants that he regarded the Great Hill proposal as being more favorable than another proposal the Company had received.

93.    The Great Hill proposal contemplated that Great Hill would acquire 56.5% of Zaycon's fully diluted equity.

94.    This meant that the equity of all existing members of Zaycon would be diluted.

95.    In addition, the Great Hill proposal required Zaycon to be debt-free at the closing of Great Hill's investment.

96.    This meant that Braddock would be required to convert all of his remaining debt to equity.

97.    Braddock and Defendants Maresca, Giunta, Conrad and Kremin thereupon agreed that Braddock would convert all of his debt to equity in order to facilitate the Great Hill transaction.

98.    In addition, Braddock and Defendants Maresca, Giunta, Conrad and Kremin agreed once again that Braddock would be given an accurate capitalization chart and the other paperwork necessary to enable Braddock to effectuate the conversion of his debt to equity.

99.    Giunta thereupon undertook to provide Braddock with an accurate capitalization chart and the other paperwork necessary to enable Braddock to effectuate the conversion of his debt to equity.

100.    Defendants Maresca, Giunta, Conrad and Kremin understood that Zaycon was desperately in need of a capital infusion.

COMPLAINT - 15

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

101.    However, they feared that Great Hill's investment would change the power structure in the Company.

102.    In particular, Defendants Maresca, Giunta, Conrad and Kremin feared that with Great Hill and Braddock being the largest investors in the Company, and with Braddock exercising management control in his capacity as Co-managing Member and CEO, they would no longer be able to control the Company.

103.    Defendants Maresca, Giunta, Conrad and Kremin also recognized that Braddock's conversion of his debt to Class A equity as required by Great Hill would increase Braddock's voting power.

### Conspiracy to Oust Braddock

104.    Accordingly, Defendants Maresca, Giunta, Conrad and Kremin commenced looking for a way to get rid of Braddock but to hold onto Great Hill.

105.    To that end, Defendants Maresca, Giunta, Conrad and Kremin asked Vertical and Shwarts whether Great Hill would complete the contemplated transaction even if they fired Braddock.

106.    Vertical and Shwarts had touted Braddock's skills and experience in order to interest Great Hill in Zaycon in the first place.

107.    In addition, Vertical and Shwarts knew or should have known that private equity firms look for experience, leadership and "skin in the game" before committing significant capital.

108.    On the other hand, Shwarts and Vertical wanted to get rid of Braddock because Shwarts understood that Braddock was losing confidence in Shwarts's ability to successfully

COMPLAINT - 16

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

perform his duties as an investment banker for Zaycon.

109.    Upon information and belief, in an attempt to get rid of Braddock and protect their investment banking fees, and in the face of increasing division within the Company, Vertical and Shwarts told Maresca, Giunta, Conrad and Kremin that Zaycon could go ahead and fire Braddock and remove him from his position as Co-managing Member because Vertical and Shwarts could close the Great Hill deal even without Braddock.

110.    Upon information and belief, Shwarts went so far as to tell Maresca, Giunta, Conrad and Kremin that Braddock was not needed because Shwarts would assume the role of CEO of Zaycon once Braddock was gone.

111.    As a result, although it had been Braddock's leadership and money which had put Zaycon on a trajectory to raise investment capital and to fulfill its potential in the first place, Defendants Zaycon, Maresca, Giunta, Conrad and Kremin decided to immediately terminate both Braddock's employment and his status as Co-managing Member of the Company.

112.    Simultaneously, Defendants Zaycon, Maresca, Giunta and Conrad decided to delay providing Braddock with an accurate capitalization chart and the other paperwork necessary for Braddock to implement the contemplated conversion of his debt to equity as required by Great Hill.

113.    As a result, Giunta provided Braddock with two capitalization charts which were manifestly inaccurate by virtue, among other things, of the fact that they failed to include any provision for accrued interest on Braddock's loans to the Company.

114.    To remove Braddock as Co-managing Member under the Company's Operating Agreement, Defendants Maresca, Giunta, Conrad and Kremin needed 80% of the eligible Class

COMPLAINT - 17

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

A Units to vote for Braddock's removal.

115.    On or about April 19 and 20, 2016, Defendants Maresca, Giunta, Conrad and Kremin  prepared and signed a document denominated a Consent of Members (the "Consent") resolving that Braddock was to be removed as a manager of Zaycon.

116.    In addition, Defendants obtained the signatures of several other members of Zaycon on the Consent.

117.    On April 21, 2016, without any advance notice or warning of their intentions, Defendants Maresca and Giunta informed Braddock that the holders of at least 80% of the Class A membership units of Zaycon had voted to remove him as a manager, and that he was being terminated as an employee.

118.    Defendants' termination of Braddock's status as Co-managing Member and termination of his employment as CEO was wrongful for several reasons.

119.    First, as the largest single investor in and largest lender to the Company, Braddock had the right to vote over 20% of the voting units of the Company.  Doing so would have prevented Braddock's termination as CEO and Co-managing Member.

120.    Indeed, it was the manipulation of the capitalization structure and capitalization chart of the Company by Defendants Maresca, Giunta, Conrad and Kremin that allowed these Defendants to take the position that they had 80% of the votes necessary to effectuate Braddock's removal as Co-managing Member.

121.    The manipulation of the Zaycon capitalization structure by Defendants Maresca, Giunta, Conrad and Kremin included failing to properly record all of Braddock's membership units in the Company's capitalization chart.

COMPLAINT - 18

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1403877.01

122.   The manipulation of the Zaycon capitalization structure by Defendants Maresca, Giunta, Conrad and Kremin also included issuing vast quantities of membership units to individuals who had invested no money in the Company, including themselves, the fact of which was concealed from Braddock.   Thus, the issuance of 3,000,000 Class A membership units to Conrad and 3,000,000 Class A membership units to Kremin and 1,750,000 Class A membership units to Maresca had been for no cash consideration.   In addition, and to the extent that these issuances had been for services allegedly performed, they had been vastly disproportionate in amount as compared to the 250,000 units of equity issued for services to Braddock in lieu of salary in consideration of his employment contract.

123.   Second, Defendants manipulated the voting process that resulted in the execution of the Consent by fraudulently inducing certain Zaycon members to vote for Braddock's removal, thereby improperly obtaining the 80% majority necessary to oust Braddock as Co-managing Member under the Operating Agreement.

124.   Specifically, to get the signatures of other members of Zaycon on the Consent, Defendants falsely and fraudulently told them that Braddock was opposed to the deal with Great Hill and that he would kill it.

125.   In the case of Zaycon member Nathan Brown, Conrad and Giunta each called him to urge him to vote for the removal of Braddock on the alleged grounds that Braddock would sabotage the deal with Great Hill.   In each instance, Brown withheld his consent.   It was only when he received a third call telling him that Braddock was opposed to the deal with Great Hill – this one from Shwarts – that Brown concluded that the allegations against Braddock must be true and that he agreed to sign the Consent.

COMPLAINT - 19

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1403877.01

126.    Defendants further manipulated the voting process by conducting the purported vote in secret without a meeting or even notice or any opportunity for a discussion during which Braddock could have set the record straight and been heard by his fellow members before they voted.

127.    Third, Defendants acted wrongfully by withholding information and documents from Braddock which he needed in order to effectuate his already announced intended exercise of his right to convert the debt owed to him into Class A voting equity, and to exercise his option to buy additional Class A membership units.  Braddock's conversion of his debt to Class A voting equity as required by Great Hill and his purchase of additional Class A membership units would have deprived Defendants of their purported 80% voting majority.  Accordingly, by failing to provide Braddock with an accurate capitalization chart and the other paperwork he required, Defendants prevented Braddock from exercising his conversion rights and purchasing additional Class A units in time to vote against, and thus prevent, his ouster as Co-managing Member.

128.    In short, after Braddock had put Zaycon on an impressive trajectory, Defendants conspired to wrongfully remove him as Co-managing Member and to terminate his employment contract.

129.    Defendants Maresca, Giunta, Conrad and Kremin did so in order to further their own self-interest.

130.    Defendants Maresca, Giunta, Conrad and Kremin did so in order to maintain control of the Company.

131.    Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that it

COMPLAINT - 20

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

would have been in the best interests of the Company to retain Braddock and to complete the Great Hill transaction.

132.    Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that Braddock had been bankrolling the Company for them.

133.    Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that their own investments in the Company were considerably smaller than Braddock's or non-existent.

134.    Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that they had utilized Braddock's involvement and investment in Zaycon to elicit Great Hill's interest in the first place.

135.    Defendants Maresca, Giunta, Conrad and Kremin did so in the misguided belief that Great Hill would proceed with its investment even after Braddock had been removed from management.

136.    Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that the Company's interference with Braddock's exercise of his options prevented the Company from being debt free as required by Great Hill.

137.    Zaycon's April 21, 2016 letter to Braddock notifying him of the termination of his employment and of his status as Co-managing Member stated that Giunta had been appointed as a replacement manager.

138.    However, on or about July 6, 2016 Giunta resigned as the co-manager of Zaycon.

139.    Upon information and belief, no one has replaced Giunta as co-manager.

140.    Maresca now runs the Company as its sole managing member in violation of Section 4.1 of the Operating Agreement, which states that "[t]he Company shall be managed by

COMPLAINT - 21

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1403877.01

two managers."

141.    Maresca now runs the Company on a part time basis.

142.    Maresca now runs the Company as a private fiefdom without providing adequate or often any disclosure to the other members.

143.    Each and every act taken by Maresca as the sole manager of Zaycon since the resignation of Giunta has been invalid and non-binding on the Company under the Operating Agreement.

144.    Defendants' termination of Braddock's employment as CEO left the Company or its members indebted to Braddock under the Operating Agreement in the amount of the value of his membership interest.

145.    When Braddock brought this to the attention of the Company he was told that it was anticipated that the Company would buy his interest with proceeds generated in the Great Hill transaction.

146.    However, after the removal of Braddock as a co-manager and the termination of his employment contract as CEO, Great Hill declined to invest in Zaycon.

147.    This left the Company starved for necessary capital to expand and grow and on the verge of insolvency.

148.    It also left the Company unable to pay the amounts owed to Braddock.

149.    On or about June 27, 2016, Braddock brought a new private equity financing proposal to the Company from a private equity firm by the name of Spring Lake Equity Partners ("Spring Lake").

150.    The Spring Lake Proposal contemplated the investment of $7 million of

COMPLAINT - 22

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

desperately needed fresh capital into Zaycon.

151.    Defendants rejected the Spring Lake proposal out of hand.

152.    In addition, although Spring Lake asked Defendants for a counter-proposal, Defendants refused to provide one.

153.    Defendants' actions have caused the Company to lose two excellent financing opportunities, either of which could have provided the Company with the capital necessary to allow it to grow and flourish.

154.    Defendants' actions have deprived the Company of much needed capital.

155.    Defendants' actions have deprived the Company of experienced leadership.

156.    Since the wrongful removal of Braddock as a co-Manager and the wrongful termination of his employment contract, Defendants have failed to apprise Braddock of significant developments affecting both his interest in the Company and the Company itself.

157.    Likewise, since the wrongful removal of Braddock as a co-Manager and the wrongful termination of his employment contract, Defendants have prevented or sought to prevent Braddock from obtaining information and documents about Zaycon by interfering with Braddock's attempts to obtain such information and documents from other Zaycon owners and employees.

158.    Braddock brings this action to recover damages for violations of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, Washington State securities laws, common law fraud, negligence, breach of contract, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty in an amount to be established at trial in excess of $6.5 million dollars, and for a declaratory judgment that some or all of the membership units issued to

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Conrad, Maresca and Kremin and others are void.

## V.    FIRST CLAIM

### (Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5)

159.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

160.    Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make their statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Braddock.

161.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct involving materially false and misleading statements, to mislead and defraud Braddock.

162.    Certain of these misrepresentations and omissions were fraudulently contained in the Second Amended and Restated Operating Agreement of Zaycon Foods dated November 1, 2012, a copy of which, as amended, was provided to Braddock during or about the summer of 2014.

163.    The Operating Agreement falsely stated that the number of Class A Units which had been issued to Mike Conrad was 1,375,000.

164.    The Operating Agreement falsely stated that the number of Class A units which had been issued to Adam Kremin was 1,375,000.

COMPLAINT - 24

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

165.     The Operating Agreement falsely stated that the number of Class A Units which had been issued to Frank Maresca was 750,000.

166.     The Operating Agreement falsely stated that the total number of Class A Units which had been issued to Zaycon members was 5,500,000.

167.     The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Conrad.

168.     The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Kremin.

169.     The Operating Agreement failed to disclose that at least 1,750,000 Class A Units had been issued to Maresca.

170.     The Operating Agreement failed to disclose that over 3,000,000 Class A Units had been issued to Giunta.

171.     The Operating Agreement failed to disclose that the total number of Class A Units which had been issued to Zaycon members was over 14,881,000.

172.     Additional fraudulent misrepresentations and omissions were made in a series of meetings in New York and Colorado and during telephone conversations while Braddock was in New York or Colorado which began during mid-2014 and continued until January 2016.

173.     During these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants, misrepresented a) that the Individual Defendants and other investors had placed substantial sums into the Company; and b) that an accurate capitalization chart was in the process of being prepared and would be provided to Braddock as soon as it was ready.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

174.     In addition, Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal material adverse information about the business, operations and future prospects of Zaycon from Braddock.

175.     In particular, during these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants, fraudulently failed to inform Braddock that a) DFI had initiated an action against Conrad in 2009; b) DFI had issued a Cease and Desist Order as to Conrad in January 2010; c) DFI had initiated an action against Kremin in 2009; d) DFI had issued a Cease and Desist Order as to Kremin in January 2010; e) Conrad had gone into personal bankruptcy in 2010; f) Maresca had been a creditor in Conrad's bankruptcy proceeding; g) Maresca had been given his interest in the Company for little or no consideration; h) Maresca owned at least 1,000,000 more voting units than the number of voting units set forth in Zaycon's Operating Agreement; i) Kremin had been a creditor in Conrad's bankruptcy proceeding; j) Kremin had been given his interest in the Company for little or no consideration; k) Kremin owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; l) the law firm which prepared Zaycon's Operating Agreement had been a creditor in Conrad's bankruptcy proceeding; m) Conrad had been given his own interest in the Company for little or no consideration; n) Conrad owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; and o) Giunta owned over 3,000,000 voting units which were not referenced in the Operating Agreement.

176.     During the period from mid-2014 through January 2016, Maresca, Giunta,

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1  Conrad and Kremin, individually and on behalf of Zaycon and one another, continued to make

2  the Misrepresentations and Omissions, orally and in writing, to Braddock in connection with

3  solicitations of additional capital and loans from Braddock.

4          177.    Each of Braddock's decisions to acquire Zaycon securities was made in reliance

5  on the Misrepresentations and Omissions made by Maresca, Giunta, Conrad and Kremin.

6          178.    The Misrepresentations and Omissions used to solicit or induce Braddock to

7  invest and/or loan money into and for Zaycon made by Maresca, Giunta, Conrad and Kremin

8  were respectively false and fraudulent, or operated as a falsehood and a fraud on Braddock.

9          179.    Braddock would not have invested in Zaycon if Defendants Maresca, Giunta,

10  Conrad and Kremin had not made misrepresentations, and if Braddock had known the facts

11  which Defendants Maresca, Giunta, Conrad and Kremin, in each case individually and on behalf

12  of one another and Zaycon, failed to disclose.

13          180.    Braddock's agreements to invest in Zaycon and to loan money to Zaycon were

14  made in reliance on the fraudulent Misrepresentations and Omissions made by Defendants

15  Maresca, Giunta, Conrad and Kremin.

16          181.    The fraudulent Misrepresentations and Omissions made by Defendants Maresca,

17  Giunta, Conrad and Kremin were material.

18          182.    At the time Defendants Maresca, Giunta, Conrad and Kremin made the above

19  referenced fraudulent Misrepresentations and Omissions, Defendants Maresca, Giunta, Conrad

20  and Kremin knew that their Misrepresentations and Omissions were fraudulent.

21          183.    Defendants Maresca, Giunta, Conrad and Kremin made their fraudulent

22  Misrepresentations and Omissions with the intent to deceive Braddock.

COMPLAINT - 27

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

184.    Defendants Maresca, Giunta, Conrad and Kremin made their fraudulent Misrepresentations and Omissions with intent to induce Braddock to join Zaycon and to invest in Zaycon.

185.    Defendants Maresca, Giunta, Conrad and Kremin made their fraudulent Misrepresentations and Omissions with reckless disregard for truth or falsity.

186.    Braddock reasonably relied upon the fraudulent Misrepresentations and Omissions made by Maresca, Giunta, Conrad and Kremin to his detriment.

187.    Each of the fraudulent Misrepresentations and Omissions made by Defendants Maresca, Giunta, Conrad and Kremin caused Braddock to sustain damages.

188.    The fraudulent Misrepresentations and Omissions made by Maresca, Giunta, Conrad and Kremin have caused Braddock to lose his entire investment in Zaycon.

189.    The fraudulent Misrepresentations and Omissions made by Maresca, Giunta, Conrad and Kremin have caused Braddock to lose the money he loaned to Zaycon.

190.    The allegations set forth above establish a strong inference that the Defendants acted with scienter in that they had actual knowledge of the Misrepresentations and Omissions, or acted with reckless disregard for the truth in that they failed to ascertain and disclose material facts. Defendants' material misrepresentations and/or omissions were made knowingly and/or with recklessness disregard for the truth and for the purpose and with the effect of concealing the truth from Braddock.

191.    Defendants herein are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons with ultimate authority over the Misrepresentations and Omissions alleged herein.

COMPLAINT - 28

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

192.    Braddock has been caused to sustain losses and damages as a result of Defendants' Misrepresentations and Omissions.

193.    Braddock would not have purchased any interest in Zaycon if he had been aware that the ownership and voting structure of Zaycon had been artificially manipulated by Defendants' fraudulent scheme, misleading statements, misrepresentations and material omissions.

194.    At the time of Defendants' materially false representations and omissions, Braddock was ignorant of the falsity of the statements made and of the facts omitted.

195.    As a direct and proximate result of Defendants' wrongful conduct, Braddock has sustained damages in connection with his interest in Zaycon in an amount to be established at trial in excess of $6,500,000.

## VI.    SECOND CLAIM

**(Violation of RCW 21.20.010 – Unlawful Offers, Sales and Purchases of Security)**

196.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

197.    Zaycon was a seller of Zaycon securities to Braddock for purposes of RCW 21.20.010.

198.    Conrad was a seller of Zaycon securities to Braddock for purposes of RCW 21.20.010.

199.    Kremin was a seller of Zaycon securities to Braddock for purposes of RCW 21.20.010.

200.    Maresca was a seller of Zaycon securities to Braddock for purposes of RCW 21.20.010.

COMPLAINT - 29

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1403877.01

201.    Giunta was a seller of Zaycon securities to Braddock for purposes of RCW 21.20.010.

202.    In connection with the sales of securities to Braddock and the purchase of securities by Braddock in Zaycon, Defendants violated RCW 21.20.010 by directly or indirectly making untrue statements of material fact and/or omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and by engaging in acts, practices, or a course of business which operated as a fraud or deceit upon Braddock.

203.    Certain of these misrepresentations and omissions were fraudulently contained in the Second Amended and Restated Operating Agreement of Zaycon Foods dated November 1, 2012, a copy of which, as amended, was provided to Braddock during or about the summer of 2014.

204.    The Operating Agreement falsely stated that the number of Class A Units which had been issued to Mike Conrad was 1,375,000.

205.    The Operating Agreement falsely stated that the number of Class A units which had been issued to Adam Kremin was 1,375,000.

206.    The Operating Agreement falsely stated that the number of Class A Units which had been issued to Frank Maresca was 750,000.

207.    The Operating Agreement falsely stated that the total number of Class A Units which had been issued to Zaycon members was 5,500,000.

208.    The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Conrad.

COMPLAINT - 30

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

209.    The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Kremin.

210.    The Operating Agreement failed to disclose that at least 1,750,000 Class A Units had been issued to Maresca.

211.    The Operating Agreement failed to disclose that over 3,000,000 Class A Units had been issued to Giunta.

212.    The Operating Agreement failed to disclose that the total number of Class A Units which had been issued to Zaycon members was over 14,881,000.

213.    Additional fraudulent misrepresentations and omissions were made in a series of meetings in New York and Colorado and during telephone conversations while Braddock was in New York or Colorado which began during mid-2014 and continued until January 2016.

214.    During these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants, misrepresented a) that the Individual Defendants and other investors had placed substantial sums into the Company; and b) that an accurate capitalization chart was in the process of being prepared and would be provided to Braddock as soon as it was ready.

215.    In addition, during these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants, fraudulently failed to inform Braddock that a) DFI had initiated an action against Conrad in 2009; b) DFI had issued a Cease and Desist Order as to Conrad in January 2010; c) DFI had initiated an action against Kremin in 2009; d) DFI had issued a Cease and Desist Order as to Kremin in January 2010; e) Conrad had gone into personal bankruptcy in 2010; f) Maresca

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

had been a creditor in Conrad's bankruptcy proceeding; g) Maresca had been given his interest in the Company for little or no consideration; h) Maresca owned at least 1,000,000 more voting units than the number of voting units set forth in Zaycon's Operating Agreement; i) Kremin had been a creditor in Conrad's bankruptcy proceeding; j) Kremin had been given his interest in the Company for little or no consideration; k) Kremin owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; l) the law firm which prepared Zaycon's Operating Agreement had been a creditor in Conrad's bankruptcy proceeding; m) Conrad had been given his own interest in the Company for little or no consideration; n) Conrad owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; and o) Giunta owned over 3,000,000 voting units which were not referenced in the Operating Agreement.

216.    During the period from mid-2014 through January 2016, Maresca, Giunta, Conrad and Kremin, individually and on behalf of Zaycon and one another, continued to make the Misrepresentations and Omissions, orally and in writing, to Braddock in connection with solicitations of additional capital and loans from Braddock.

217.    Defendants made the Misrepresentations.

218.    Defendants made the Omissions.

219.    Defendants acted with intent to defraud Braddock.

220.    Braddock did not know of the Misrepresentations and Omissions.

221.    Defendants' Misrepresentations and Omissions were material to the purchase of Zaycon securities by Braddock.

222.    Braddock reasonably relied on Defendants' Misrepresentations and Omissions.

COMPLAINT - 32

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

223.    Braddock would not have purchased Zaycon securities but for the Misrepresentations and Omissions.

224.    Braddock has suffered damages proximately caused by Defendants' violations of RCW 21.20.010 in an amount to be established at trial in excess of $6,500,000.

## VII.    THIRD CLAIM

**(Conrad's Liability under RCW 21.20.430 –Violation of DFI Cease and Desist Order)**

225.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

226.    Conrad's participation in the sale of securities to Braddock was in direct violation of the January 27, 2010, DFI Cease and Desist Order which expressly precluded Conrad from (i) violating RCW 21.20.140 by offering or selling securities for which there was no registration on file with the Washington State Securities Administration; (ii) violating RCW 21.20.040 by offering or selling securities while not registered as a salesperson or broker-dealer in the State of Washington; and (iii) violating  RCW 21.20.010 by making misstatements of material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

227.    Conrad offered and/or sold securities for which there was no registration on file with the Washington State Securities Administration.

228.    Conrad offered and/or sold securities while not registered as a salesperson or broker-dealer in the State of Washington.

229.    Conrad offered and/or sold securities by making misstatements of material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

COMPLAINT - 33

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

230. Based upon the foregoing, Conrad violated the January 27, 2010 DFI Cease and Desist Order.

231. Conrad is liable to Braddock for all damages caused to Braddock, and for all remedies to which Braddock is entitled, as the result of his violations of RCW 21.20.010, RCW 21.20.040 and RCW 21.20.140 in selling Zaycon securities to Braddock in an amount to be established at trial in excess of $6,500,000.

## VIII.   FOURTH CLAIM

**(Kremin's Liability under RCW 21.20.430 – Violation of DFI Cease and Desist Order)**

232. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

233. Kremin's participation in the sale of securities to Braddock was in direct violation of the January 27, 2010 DFI Cease and Desist Order which expressly precluded Kremin from (i) violating RCW 21.20.140 by offering or selling securities for which there was no registration on file with the Washington State Securities Administration; (ii) violating RCW 21.20.040 by offering or selling securities while not registered as a salesperson or broker-dealer in the State of Washington, and (iii) violating  RCW 21.20.010 by making misstatements of material fact or omission to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

234. Kremin offered and/or sold securities for which there was no registration on file with the Washington State Securities Administration.

235. Kremin offered and/or sold securities while not registered as a salesperson or broker-dealer in the State of Washington.

236. Kremin offered and/or sold securities by making misstatements of material fact

COMPLAINT - 34

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

237.     Based upon the foregoing, Kremin violated the January 27, 2010 DFI Cease and Desist Order.

238.     Kremin is liable to Braddock for all damages caused to Braddock, and for all remedies to which Braddock is entitled, as the result of his violations of RCW 21.20.010, RCW 21.20.040 and RCW 21.20.140 in selling Zaycon securities to Braddock in an amount to be established at trial in excess of $6,500,000.

## IX.     FIFTH CLAIM

### (Fraud Claim Against All Defendants)

239.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and length herein.

240.     During or about mid-2014, Maresca, Giunta, Conrad and Kremin, individually and on behalf of Zaycon and one another, aggressively pursued Braddock in order to interest him in investing in Zaycon.

241.     Maresca, Giunta, Conrad and Kremin, individually and on behalf of Zaycon and one another, made various Misrepresentations and Omissions to Braddock, orally and in writing, in an effort to solicit Braddock's financial and managerial involvement in Zaycon.

242.     Certain of these misrepresentations and omissions were fraudulently contained in the Second Amended and Restated Operating Agreement of Zaycon Foods dated November 1, 2012, a copy of which, as amended, was provided to Braddock during or about the summer of 2014.

243.     The Operating Agreement falsely stated that the number of Class A Units which

COMPLAINT - 35

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

had been issued to Mike Conrad was 1,375,000.

244.    The Operating Agreement falsely stated that the number of Class A units which had been issued to Adam Kremin was 1,375,000.

245.    The Operating Agreement falsely stated that the number of Class A Units which had been issued to Frank Maresca was 750,000.

246.    The Operating Agreement falsely stated that the total number of Class A Units which had been issued to Zaycon members was 5,500,000.

247.    The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Conrad.

248.    The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Kremin.

249.    The Operating Agreement failed to disclose that at least 1,750,000 Class A Units had been issued to Maresca.

250.    The Operating Agreement failed to disclose that over 3,000,000 Class A Units had been issued to Giunta.

251.    The Operating Agreement failed to disclose that the total number of Class A Units which had been issued to Zaycon members was over 14,881,000.

252.    Additional fraudulent misrepresentations and omissions were made in a series of meetings in New York and Colorado and during telephone conversations while Braddock was in New York or Colorado which began during mid-2014 and continued until January 2016.

253.    During these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendant,

COMPLAINT - 36

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1403877.01

misrepresented a) that the Individual Defendants and other investors had placed substantial sums into the Company; and b) that an accurate capitalization chart was in the process of being prepared and would be provided to Braddock as soon as it was ready.

254.   In addition, during these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants, fraudulently failed to inform Braddock that a) DFI had initiated an action against Conrad in 2009; b) DFI had issued a Cease and Desist Order as to Conrad in January 2010; c) DFI had initiated an action against Kremin in 2009; d) DFI had issued a Cease and Desist Order as to Kremin in January 2010; e) Conrad had gone into personal bankruptcy in 2010; f) Maresca had been a creditor in Conrad's bankruptcy proceeding; g) Maresca had been given his interest in the Company for little or no consideration; h) Maresca owned at least 1,000,000 more voting units than the number of voting units set forth in Zaycon's Operating Agreement; i) Kremin had been a creditor in Conrad's bankruptcy proceeding; j) Kremin had been given his interest in the Company for little or no consideration; k) Kremin owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; l) the law firm which prepared Zaycon's Operating Agreement had been a creditor in Conrad's bankruptcy proceeding; m) Conrad had been given his own interest in the Company for little or no consideration; n) Conrad owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; and o) Giunta owned over 3,000,000 voting units which were not referenced in the Operating Agreement.

255.   During the period from mid-2014 through January 2016, Maresca, Giunta, Conrad and Kremin, individually and on behalf of Zaycon and one another, continued to make

COMPLAINT - 37

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

the Misrepresentations and Omissions, orally and in writing, to Braddock in connection with solicitations of additional capital and loans from Braddock.

256.    Each of Braddock's decisions to acquire Zaycon securities was made in reliance on the Misrepresentations and Omissions made by Maresca, Giunta, Conrad and Kremin.

257.    The Misrepresentations and Omissions used to solicit or induce Braddock to invest and/or loan money into and for Zaycon made by Maresca, Giunta, Conrad and Kremin were false.

258.    Braddock would not have invested in Zaycon but for the Misrepresentations and Omissions.

259.    Braddock's agreements to invest in Zaycon and to loan money to Zaycon were made in reliance on the fraudulent Misrepresentations and Omissions made by Defendants Maresca, Giunta, Conrad and Kremin.

260.    The fraudulent Misrepresentations and Omissions made by Defendants Maresca, Giunta, Conrad and Kremin were material.

261.    At the time Defendants Maresca, Giunta, Conrad and Kremin made the above referenced fraudulent Misrepresentations and Omissions, Defendants Maresca, Giunta, Conrad and Kremin knew that their Misrepresentations and Omissions were fraudulent.

262.    Defendants Maresca, Giunta, Conrad and Kremin made their fraudulent Misrepresentations and Omissions with the intent to deceive Braddock.

263.    Defendants Maresca, Giunta, Conrad and Kremin made their fraudulent Misrepresentations and Omissions with intent to induce Braddock to join Zaycon and to invest in Zaycon.

COMPLAINT - 38

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

264.     Defendants Maresca, Giunta, Conrad and Kremin made their fraudulent Misrepresentations and Omissions with reckless disregard for truth or falsity.

265.     Braddock reasonably relied upon the fraudulent Misrepresentations and Omissions made by Maresca, Giunta, Conrad and Kremin to his detriment.

266.     Each of the fraudulent Misrepresentations and Omissions made by Defendants Maresca, Giunta, Conrad and Kremin caused Braddock to sustain damages.

267.     The fraudulent Misrepresentations and Omissions made by Maresca, Giunta, Conrad and Kremin have caused Braddock to lose his entire investment in Zaycon.

268.     The fraudulent Misrepresentations and Omissions made by Maresca, Giunta, Conrad and Kremin have caused Braddock to lose the money he loaned to Zaycon.

269.     The wrongdoing of Maresca, Giunta, Conrad and Kremin was intentional, wanton, outrageous, morally culpable, and perpetrated with wrongful, reckless and malicious disregard for the rights of Zaycon and its members, including Braddock.

270.      As a direct and proximate result of Defendants' wrongful conduct, Braddock has sustained damages in connection with his interest in Zaycon in an amount to be established at trial in excess of $6,500,000.

## X.     SIXTH CLAIM

### (Negligent Misrepresentation Against All Defendants)

271.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

272.     Defendants had a duty to provide Braddock with complete and accurate information respecting Zaycon, including but not limited to information respecting its capitalization, prospects, risks and ownership.

COMPLAINT - 39

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

273.     Defendants Zaycon, Maresca, Giunta, Conrad and Kremin, acting on behalf of one another and Zaycon, negligently supplied Braddock with false and misleading information respecting Zaycon's capitalization, prospects, risks and ownership prior to each of Braddock's investments and loans into Zaycon.

274.     Certain of Defendants' misrepresentations and omissions were negligently contained in the Second Amended and Restated Operating Agreement of Zaycon Foods dated November 1, 2012, a copy of which, as amended, was provided to Braddock during or about the summer of 2014.

275.     The Operating Agreement falsely stated that the number of Class A Units which had been issued to Mike Conrad was 1,375,000.

276.     The Operating Agreement falsely stated that the number of Class A units which had been issued to Adam Kremin was 1,375,000.

277.     The Operating Agreement falsely stated that the number of Class A Units which had been issued to Frank Maresca was 750,000.

278.     The Operating Agreement falsely stated that the total number of Class A Units which had been issued to Zaycon members was 5,500,000.

279.     The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Conrad.

280.     The Operating Agreement failed to disclose that at least 3,000,000 Class A Units had been issued to Kremin.

281.     The Operating Agreement failed to disclose that at least 1,750,000 Class A Units had been issued to Maresca.

COMPLAINT - 40

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

282.   The Operating Agreement failed to disclose that over 3,000,000 Class A Units had been issued to Giunta.

283.   The Operating Agreement failed to disclose that the total number of Class A Units which had been issued to Zaycon members was over 14,881,000.

284.   Defendants Zaycon, Maresca, Giunta, Conrad and Kremin, acting on behalf of one another and Zaycon, also made negligent misrepresentations to Braddock by misrepresenting a) that the Individual Defendants and other investors had placed substantial sums into the Company; and b) that an accurate capitalization chart was in the process of being prepared and would be provided to Braddock as soon as it was ready.

285.   In addition, Defendants Zaycon, Maresca, Giunta, Conrad and Kremin, acting on behalf of one another and Zaycon, negligently failed to inform Braddock that a) DFI had initiated an action against Conrad in 2009; b) DFI had issued a Cease and Desist Order as to Conrad in January 2010; c) DFI had initiated an action against Kremin in 2009; d) DFI had issued a Cease and Desist Order as to Kremin in January 2010; e) Conrad had gone into personal bankruptcy in 2010; f) Maresca had been a creditor in Conrad's bankruptcy proceeding; g) Maresca had been given his interest in the Company for little or no consideration; h) Maresca owned at least 1,000,000 more voting units than the number of voting units set forth in Zaycon's Operating Agreement; i) Kremin had been a creditor in Conrad's bankruptcy proceeding; j) Kremin had been given his interest in the Company for little or no consideration; k) Kremin owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; l) the law firm which prepared Zaycon's Operating Agreement had been a creditor in Conrad's bankruptcy proceeding; m) Conrad had been given his own

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

interest in the Company for little or no consideration; n) Conrad owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; and o) Giunta owned over 3,000,000 voting units which were not referenced in the Operating Agreement.

286.    Braddock relied on the materially false and misleading statements and/or the non-disclosure of material adverse facts by Defendants in making his investments in Zaycon from August 2014 through January 2016.

287.    Braddock's reliance on the materially false and misleading statements made by Defendants and/or on their non-disclosure of material adverse facts was reasonable and justified.

288.    The false and misleading information supplied and furnished by Defendants was the proximate cause of the damages sustained by Braddock.

289.    As a direct and proximate result of Defendants' wrongful conduct, Braddock has sustained damages in connection with his interest in Zaycon in an amount to be established at trial in excess of $6,500,000.

## XI.    SEVENTH CLAIM

### (Breach of Fiduciary Duty)

290.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

291.    Plaintiff asserts this claim against Defendants Maresca, Giunta and Conrad.

292.    As managers and control persons of Zaycon, Maresca, Giunta and Conrad owed fiduciary duties of loyalty, due care, good faith/fair dealing, candor and full disclosure of all material facts to the Company and to its members and to Braddock in his capacity as a member and as Co-managing Member of Zaycon.

COMPLAINT - 42

RS  Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

293.    Braddock reasonably and justifiably reposed his trust and confidence in Maresca, Giunta and Conrad to properly perform their duties in connection with the Company and to deal fairly and act with loyalty, due care and candor and in good faith and to provide full disclosure.

294.    Maresca, Giunta and Conrad breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Braddock by misrepresenting a) that the Individual Defendants and other investors had placed substantial sums into the Company; and b) that an accurate capitalization chart was in the process of being prepared and would be provided to Braddock as soon as it was ready.

295.    Maresca, Giunta and Conrad further breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor and full disclosure to Braddock by failing to inform Braddock that a) DFI had initiated an action against Conrad in 2009; b) DFI had issued a Cease and Desist Order as to Conrad in January 2010; c) DFI had initiated an action against Kremin in 2009; d) DFI had issued a Cease and Desist Order as to Kremin in January 2010; e) Conrad had gone into personal bankruptcy in 2010; f) Maresca had been a creditor in Conrad's bankruptcy proceeding; g) Maresca had been given his interest in the Company for little or no consideration; h) Maresca owned at least 1,000,000 more voting units than the number of voting units set forth in Zaycon's Operating Agreement; i) Kremin had been a creditor in Conrad's bankruptcy proceeding; j) Kremin had been given his interest in the Company for little or no consideration; k) Kremin owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; l) the law firm which prepared Zaycon's Operating Agreement had been a creditor in Conrad's bankruptcy proceeding; m) Conrad had been given his own interest in the Company for little or no consideration; n) Conrad owned at

COMPLAINT - 43

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; and o) Giunta owned over 3,000,000 voting units which were not referenced in the Operating Agreement.

296.    Maresca, Giunta and Conrad further breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Zaycon and Braddock by (i) conspiring to terminate Braddock's employment contract and his status as Co-managing Member of the Company for their own self-interested reasons; (ii) manipulating the Zaycon capitalization structure; (iii) manipulating the voting  process that resulted in the execution of the Consent; (iv) withholding information from Braddock which he needed in order to convert the debt owed to him into Class A voting equity and to exercise his option to buy additional Class A membership units; (v) allowing Maresca to run the Company as its sole managing member in violation of Section 4.1 of the Operating Agreement, which states that "[t]he Company shall be managed by two managers"; (vi) acting in their own self-interest and contrary to the best interests of Zaycon in an effort to retain control of a company in which they had made little or no investment; (vii) sabotaging the prospect of an investment by Great Hill by terminating Braddock's status as Co-managing Member and as CEO and by interfering with the elimination of the Company's debt for their own self-interested reasons only days after receiving the Great Hill proposal and notwithstanding Great Hill's requirement that the Company be debt free at closing; (viii) refusing even to negotiate with Spring Lake or otherwise to consider or make any effort to obtain an equity investment from Spring Lake; (ix) failing to apprise Braddock of significant developments affecting both his interest in the Company and the Company itself; and (x) preventing or seeking to prevent Braddock from obtaining information

COMPLAINT - 44

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

and documents about Zaycon by interfering with Braddock's attempts to obtain such information and documents from other Zaycon owners and employees.

297.    Maresca, Giunta and Conrad have acted in bad faith and in a manner inconsistent with their fiduciary duties.

298.    The breaches of their fiduciary duties by Maresca, Giunta and Conrad have been the proximate cause of Braddock's damages.

299.    As a direct and proximate result of Defendants' wrongful conduct, Braddock has sustained damages in connection with his interest in Zaycon in an amount to be established at trial in excess of $6,500,000.

## XII.    EIGHTH CLAIM

### (Breach of Contract)

300.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

301.    Plaintiff asserts this claim against Defendants Zaycon, Maresca, Giunta, Conrad and Kremin.

302.    At all times mentioned, Zaycon and its members operated the Company pursuant to an Operating Agreement dated November 1, 2012.

303.    The Operating Agreement contained an implied covenant of good faith and fair dealing.

304.    Braddock has fulfilled and performed all the terms and conditions required of him by the terms of the Operating Agreement.

305.    Defendants Zaycon, Maresca, Giunta, Conrad and Kremin breached the Operating Agreement and Braddock's employment contract by (i) conspiring to terminate

COMPLAINT - 45

1403877.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Braddock's employment contract and his status as Co-managing Member of the Company for their own self-interested reasons; (ii) manipulating the Zaycon capitalization structure; (iii) manipulating the voting process that resulted in the execution of the Consent; (iv) withholding information from Braddock which he needed in order to convert the debt owed to him into Class A voting equity and to exercise his option to buy additional Class A membership units; (v) allowing Maresca to run the Company as its sole managing member in violation of Section 4.1 of the Operating Agreement, which states that "[t]he Company shall be managed by two managers"; (vi) acting in their own self-interest and contrary to the best interests of Zaycon in an effort to retain control of a company in which they had made little or no investment; (vii) sabotaging the prospect of an investment by Great Hill by terminating Braddock's status as Co-managing Member and as CEO and by interfering with the elimination of the Company's debt for their own self-interested reasons only days after receiving the Great Hill proposal and notwithstanding Great Hill's requirement that the Company be debt free at closing; (viii) refusing even to negotiate with Spring Lake or otherwise to consider or make any effort to obtain an equity investment from Spring Lake; (ix) failing to apprise Braddock of significant developments affecting both his interest in the Company and the Company itself; and (x) preventing or seeking to prevent Braddock from obtaining information and documents about Zaycon by interfering with Braddock's attempts to obtain such information and documents from other Zaycon owners and employees.

306.    As a result of the foregoing, Plaintiff Braddock is entitled to compensatory damages from Defendants Zaycon, Maresca, Giunta, Conrad and Kremin in an amount to be proven at trial in excess of $6,500,000 plus interest.

COMPLAINT - 46

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

# XIII.   NINTH CLAIM

## (Aiding and Abetting Breach of Fiduciary Duty)

307.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

308.   Plaintiff asserts this claim against Defendant Kremin.

309.   Defendants Maresca, Giunta and Conrad breached their fiduciary duties to Braddock by making material misrepresentations and omissions to him.

310.   Defendants Maresca, Giunta and Conrad breached their fiduciary duties to Zaycon and Braddock by, *inter alia*, conspiring to terminate Braddock's employment contract and his status as Co-managing Member of the Company for their own self-interested reasons.

311.   Defendants Maresca, Giunta and Conrad breached their fiduciary duties to Zaycon and Braddock by, *inter alia*, fraudulently inducing certain Zaycon members to vote for Braddock's removal, thereby manipulating the voting process that resulted in the execution of the Consent.

312.   Defendants Maresca, Giunta and Conrad asked Kremin to assist in making misrepresentations and omissions to Braddock.

313.   Defendants Maresca, Giunta and Conrad asked Kremin to assist in the ouster of Braddock.

314.   Defendants Maresca, Giunta and Conrad asked Kremin to assist in the manipulation of the voting process.

315.   Defendant Kremin participated in and aided and abetted in the making of misrepresentations and omissions to Braddock.

316.   Defendant Kremin participated in and aided and abetted the ouster of Braddock

COMPLAINT - 47

1403877.01



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

by advising and conspiring with Maresca, Giunta and Conrad to terminate Braddock's employment and his status as Co-managing Member of the Company.

317.    Defendant Kremin participated in and aided and abetted the manipulation of the voting process that resulted in the execution of the Consent by falsely and fraudulently telling Zaycon members that Braddock was opposed to the deal with Great Hill and that he would kill it.

318.    The actions of Kremin have caused Plaintiff Braddock to sustain damages.

319.    As a result of the foregoing, Braddock is entitled to compensatory damages from Kremin in an amount to be proven at trial in excess of $6,500,000, plus interest.

## XIV.   TENTH CLAIM

### (Declaratory Judgment)

320.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

321.    Defendants Maresca, Conrad, Giunta and Kremin awarded grossly disproportionate numbers of Zaycon membership units to themselves and to friends and family members for little or no consideration.

322.    The issuance of Zaycon membership units to Maresca, Conrad and Kremin is void.

323.    The issuance of Zaycon membership units to friends and family members of Maresca, Conrad, Giunta and Kremin for little or no consideration is void.

324.    This cause of action raises a justiciable controversy, sufficiently definite and concrete to warrant declaratory relief.

COMPLAINT - 48

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

325.   Braddock is entitled to a declaratory judgment that all or part of the Maresca, Conrad and Kremin units in Zaycon are invalid.

326.   Braddock is entitled to a declaratory judgment that all or part of the Zaycon membership units awarded to friends and family members of Maresca, Conrad, Giunta and Kremin for little or no consideration are invalid.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment as follows:

1.   Awarding compensatory damages to Plaintiff Braddock in an amount to be determined at trial in excess of $6,500,000;

2.   For a declaratory judgment that some or all of the membership units issued to Conrad, Maresca and Kremin and to others for little or no consideration are void; and

3.   Awarding such other and further relief as is just and proper, including pre-judgment interest, costs and reasonable attorneys' fees pursuant to the Securities Act of Washington.

DATED this 14th day of November, 2016.

RYAN, SWANSON & CLEVELAND, PLLC


By /s/ Michael J. Brown
    Michael Jay Brown, WSBA #9224
    David L. Tift, WSBA #13213
    RYAN, SWANSON & CLEVELAND, PLLC
    1201 Third Avenue, Suite 3400
    Seattle, Washington  98101-3034
    Telephone: (206) 464-4224
    Facsimile: (206) 583-0359
    brown@ryanlaw.com
    tift@ryanlaw.com

COMPLAINT - 49

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1

2          David G. Trachtenberg, NYSB #6675
           Trachtenberg Rodes & Friedberg LLP
3          545 Fifth Avenue, Suite 640
           New York, New York 10017
4          Phone: 212-972-2929
           Fax: 212-972-7581
5          Email: dtrachtenberg@trflaw.com
6
7          *Attorneys for Plaintiff Richard Braddock*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 50

**RS** Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359