1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9   RICHARD BRADDOCK,

10                          Plaintiff,

11         v.

12   ZAYCON FOODS, LLC, a Washington limited
     liability company; FRANK R. MARESCA, JANE
13   DOE MARESCA and the marital community
     composed thereof; MICHAEL GIUNTA, JANE
14   DOE GIUNTA and the marital community
     composed thereof; MIKE CONRAD, JANE DOE
15   CONRAD and the marital community composed
     thereof; and ADAM KREMIN, JANE DOE
16   KREMIN and the marital community composed
     thereof,
17
18                          Defendants.
19

NO. 2:16-cv-1756

**BRADDOCK'S FIRST AMENDED
COMPLAINT**

20        Plaintiff Richard Braddock ("Braddock"), by and through his attorneys, Trachtenberg

21   Rodes & Friedberg LLP and Ryan, Swanson & Cleveland PLLC, as and for his Complaint

22   herein, alleges as follows:

23                          **I. NATURE OF THE DISPUTE**

24        1.        This matter involves a systematic scheme, fueled by greed and self-interest and

25
26   implemented through deception and manipulation, to extract money from plaintiff Braddock,

BRADDOCK'S FIRST AMENDED COMPLAINT - 1
NO. 2:16 cv 1756

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1592599.03

and to ride on his reputation, perpetrated by Washington company Zaycon Foods, LLC ("Zaycon" or the "Company"), Washington residents Michael Conrad and Adam Kremin and New York residents Michael Giunta and Frank Maresca (Maresca, Giunta, Conrad and Kremin are hereinafter referred to as the "Individual Defendants").

2.     Zaycon is an innovative, early stage food distribution company that utilizes a "farm-to-customer" model.  It was on the path to becoming a game changer in the grocery business before it was hijacked by the Individual Defendants.

3.     Braddock is a member of Zaycon, its largest investor and its highly experienced former executive chairman, chief executive officer and co-managing Member.

4.     Defendants deliberately defrauded Braddock and engaged in self-interested abuses of authority.  They breached their obligations to Braddock under federal and state securities and common law anti-fraud laws, as well as their fiduciary duties of loyalty, care and disclosure, and their contract-based duties of good faith and fair dealing.

5.     As detailed below, Defendants:

- induced Braddock to invest in Zaycon based on misrepresentations and omissions concerning, among other things, its capitalization and prospects for raising additional capital;

- failed to inform Braddock before he invested of the true ownership of the Company;

- failed to inform Braddock before he invested of the leadership vacuum which would and did force him to become the executive chairman and chief executive officer and a managing member of the Company to keep it afloat;

- failed to inform Braddock, prior to each investment he made, of facts (including but not limited to certain Individual Defendants being subject to regulatory sanctions, being associated with a failed venture, and having previously filed for bankruptcy) that rendered Defendants'

representations and other statements (including but not limited to the Company's valuation and ability to gain access to needed capital) false and misleading in the context in which they were made;

• issued units to one another for little or no consideration;

• consistently failed to provide Braddock with an accurate cap chart;

• took advantage of Braddock's leadership and marketing expertise to bring about a 51% increase in revenue;

• took advantage of the fact that Braddock was forced to provide additional and unanticipated financing multiple times to stave off the Company's insolvency, which he did single handedly;

• took advantage of Braddock's reputation and experience to create new and real opportunities to raise private equity capital, which Braddock did;

• prevented Braddock from exercising his contractual right to convert debt to equity and his contractual options to acquire additional Zaycon units;

• failed to implement an agreed upon amendment to the Second Amended and Restated Operating Agreement which would have given voting rights to the holders of B units in the Company, which in turn would have  increased Braddock's percentage of the voting units in the Company and decreased Defendants' percentage;

• failed to implement an agreed upon Third Amended Operating Agreement which would have given voting rights to the holders of B units in the Company;

• withheld a draft of the Third Amended Operating Agreement from Braddock even though he was a co-managing member of the Company;

• withheld data from Braddock reflecting the fact that his ownership of the Company on a fully diluted basis exceeded 20%;

• although Braddock was a co-managing member and thus certainly entitled to full disclosure, responded through Giunta and with the concurrence of Braddock's co-managing member Maresca to Braddock's requests made days before his removal from management for the latest version of the operating agreement and an accurate version of the capitalization chart by covering up the fact that new versions of

BRADDOCK'S FIRST AMENDED COMPLAINT - 3
NO. 2:16 cv 1756

1592599.03

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

these documents had been completed and were available and by sending Braddock prior versions of the documents;

- conspired to removed Braddock from management in violation of the operating agreement and other understandings, including the agreement to convert all equity in Zaycon to voting equity, the agreements allowing Braddock to convert debt to equity and the agreements allowing Braddock to acquire additional Zaycon units, all in violation of his rights as a member and a managing member and all without proper notice; and

- <u>removed Braddock from his position as a managing member based upon the vote of less than the required 80% of the units entitled to vote in accordance with the Company's operating agreement by counting non-voting units as if they were voting units, including but not limited to units owned by a trust set up by the family of Defendant Giunta.</u>

6.     As a result, Braddock seeks a) declaratory relief stating that his removal as a managing member of the Company and his removal as CEO were wrongful and of no force or effect and that actions taken by Zaycon's purported management since that time have been *ultra vires*; b) declaratory relief stating that some or all of the Zaycon membership units issued to the individual defendants for no consideration are void; c) injunctive relief reinstating Braddock as a managing member of the Company and as CEO; d) injunctive relief prohibiting the Company from taking any steps to recapitalize the Company until such time as Braddock has been reinstated as a managing member of the Company; and (e) damages in an amount to be established at trial in excess of $6.5 million.

## II. PARTIES

7.     Plaintiff Richard Braddock is a resident of New York, New York.

8.     Defendant Zaycon Foods, LLC is a Washington limited liability company with its principal place of business at 16201 E. Indiana Avenue, Suite 2150, Spokane, Washington.

9.     Defendants Mike Conrad and Jane Doe Conrad are husband and wife and

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

comprise a marital community. All of the acts of Mike Conrad were for the benefit of the Conrads and their marital community. Mike Conrad is a member and a former managing member of Zaycon. The Conrads reside at 2608 South Viewmont Drive Green Acres, Washington. The Conrads and their marital community shall collectively be referred to as "Conrad."

10.     Defendants Frank R. Maresca and Jane Doe Maresca are husband and wife and comprise a marital community. All of the acts of Frank R. Maresca were for the benefit of the Marescas and their marital community. Frank R. Maresca is a member and the managing member of Zaycon. The Marescas reside at 186 N. Manhattan Avenue, Massapequa, New York. The Marescas and their marital community shall collectively be referred to as "Maresca."

11.     Defendants Michael Giunta and Jane Doe Giunta are husband and wife and comprise a marital community. All of the acts of Michael Giunta were for the benefit of the Giuntas and their marital community. Michael Giunta is a member and a former managing member of Zaycon. The Giuntas reside at 5 Sterling Lane, Sands Point, New York. The Giuntas and their marital community shall collectively be referred to as "Giunta."

12.     Defendants Adam Kremin and Jane Doe Kremin are husband and wife and comprise a marital community. All of the acts of Adam Kremin were for the benefit of the Kremins and their marital community. Adam Kremin is a member of Zaycon. The Kremins reside at 23815 East Trent Avenue, Newman Lake, Washington. The Kremins and their marital community shall collectively be referred to as "Kremin."

### III. JURISDICTION

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a)

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

of the Securities Exchange Act of 1934 (the "Securities Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Exchange Act and 28 U.S.C. § 1367(a).

## IV. VENUE

15.     Venue is proper in this District pursuant to an agreement between the parties and Section 27 of the Securities Exchange Act and 28 U.S.C. § 1391(b). The Company is incorporated and headquartered in Washington State, and many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in the State of Washington.

16.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate telephone communications.

## V. FACTUAL BACKGROUND

### Braddock

17.     Braddock is the former president and chief operating officer of Citicorp and its principal subsidiary, Citibank, N.A.; former chairman and chief executive officer of Priceline.com, which he had joined during its startup phase, which he had taken public and which now has a market capitalization in excess of $70 billion; former chief executive officer of Medco Containment Services, Inc., the largest prescription drug services company, until its acquisition by Merck & Co., Inc. in November 1993 for $6 billion; former chairman and CEO of FreshDirect, a successful online grocer; former principal of Clayton, Dubilier & Rice, Inc., a

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

private equity firm; former chairman of True North Communications Inc.; former chairman of MidOcean Partners, a private investment fund; and a former director of Marriott International, Inc., Cadbury, PLC, Citibank, N.A., Lotus software and several privately held companies.

***Conrad's and Kremin's Prior and Undisclosed Violations of the Securities Laws***

18.     During or about 2009, the Securities Division of the State of Washington's Department of Financial Institutions ("DFI") commenced an investigation of Conrad and Kremin for their promotion and sale of shares in a company by the name of IFT Holdings, Inc., f/k/a Integrated Fuel Technologies, Inc. ("IFT").

19.     Initially, IFT's business centered on a fuel additive delivery system known as a "fuel doser." Later, IFT focused on the development of a catalyst that removes nitrogen oxides from diesel engine emissions.

20.     On or about November 24, 2009, DFI filed a Statement of Charges and Notice of Intent to Enter Order to Cease and Desist, to Impose Fines and to Recover Costs against Conrad and Kremin for their promotion and sale of shares in IFT.

21.     DFI alleged *inter alia* that: (i) Conrad and Kremin violated RCW 21.20.140, through their offer and/or sale of securities for which there was no registration on file with the Washington State Securities division of DFI; (ii) Conrad and Kremin violated RCW 21.20.040 by offering or selling said securities while not registered as a salesperson or broker-dealer in the State of Washington; and (iii) Conrad and Kremin made misstatements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of RCW 21.20.010.

22.     Conrad failed to request an administrative hearing on the charges. Kremin

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

waived the right to a hearing and submitted a written statement in lieu of a hearing.

23.     After considering the written statement and reviewing the investigative record, the Securities Administrator found no material grounds for amending the Statement of Charges against Kremin and adopted as final the findings of fact and conclusions of law set forth in the Statement of Charges.

24.     On or about January 26, 2010, DFI filed its Entry of Findings of Fact and Conclusion of Law and Final Order to Cease and Desist as to Kremin.

25.     On or about January 27, 2010, DFI filed its Entry of Findings of Fact and Conclusions of Law and Final Order to Cease and Desist as to Conrad.

26.     The Final Orders required Conrad and Kremin to (i) cease and desist from offering or selling securities in violation of RCW 21.20.140, the securities registration section of the Securities Act of Washington; (ii) cease and desist from acting as unregistered securities broker-dealers or salespersons in violation of RCW 21.20.040, the broker-dealer and securities salesperson registration section of the Securities Act of Washington; and (iii) cease and desist from violating RCW 21.20.010, the anti-fraud section of the Securities Act of Washington.

27.     In addition, Conrad was fined $10,000 by the DFI for his violations of the securities laws.

28.     At all material times, Defendants failed to disclose to Braddock and others the facts respecting the DFI investigation and Conrad's and Kremin's prior violations of the securities laws.

***Conrad's Bankruptcy***

29.     On April 22, 2010, Conrad filed a petition for bankruptcy protection in the

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1592599.03

Eastern District of Washington, Case No. 10-02447-FPC7.

30.     A significant portion of the creditors listed on Conrad's petition were IFT shareholders who had been defrauded by Conrad's IFT scheme.

31.     On or about May 12, 2010, Conrad filed Schedule F to his bankruptcy petition, which identified Adam Kremin, JC Conrad and Frank Maresca – all of whom would become associated with Zaycon – as Creditors Holding Unsecured Nonpriority Claims in the Conrad bankruptcy.

32.     Kremin is listed as a creditor due to his purported investment in IFT.

33.     JC Conrad is listed as an unsecured nonpriority creditor for a "personal loan" and as an investor in IFT.

34.     Maresca is listed as an unsecured nonpriority creditor.

35.     At all material times, Defendants failed to disclose to Braddock and others the facts respecting the Conrad bankruptcy.

***Zaycon***

36.     Zaycon was founded on January 9, 2010, by the filing of a Certificate of Formation with the Washington Secretary of State.

37.     The Zaycon business model provides for food items to be shipped directly from the farm to the consumer, thus bypassing the normal maze of wholesalers, distributors and other intermediaries. Zaycon sources its products directly from the farm in bulk purchases. Refrigerated trucks pick up the goods at the farm and deliver them directly to the consumer at predetermined central locations. By allowing consumers to buy directly, Zaycon affords them the opportunity to get fresher products, superior quality and lower cost. Similarly, by eliminating

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

warehousing, Zaycon can offer consumers cost savings of up to 50%.

38.     The Zaycon model had the prospect to revolutionize the grocery market.

39.     However, by mid-2014 the Company was floundering as it was short on capital and experienced leadership.

**Braddock Invests in Zaycon**

40.     In mid-2014, based on the breadth of Braddock's experience and his willingness to invest in start-up ventures, Defendants sought out Braddock and solicited his investment in Zaycon.

41.     Defendants thereupon made a series of fraudulent, reckless and/or negligent misrepresentations and omissions to Braddock.

**Material Misrepresentations Made in the Operating Agreement**

42.     Certain of the fraudulent, reckless and/or negligent misrepresentations were contained in the Second Amended and Restated Operating Agreement of Zaycon Foods dated November 1, 2012 (the "Operating Agreement"), a copy of which, as amended, was provided to Braddock during or about the summer of 2014.

43.     The Operating Agreement falsely stated that the number of Class A Units which had been issued to Mike Conrad was 1,375,000 when he in fact owned 3,250,000 Class A Units.

44.     The Operating Agreement falsely stated that the number of Class A units which had been issued to Adam Kremin was 1,375,000 when in fact he owned 2,750,000 Class A Units.

45.     The Operating Agreement falsely stated that the number of Class A Units which had been issued to Frank Maresca was 750,000 when in fact he owned 2,225,000 Class A Units.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

46.     The Operating Agreement falsely stated that the total number of Class A Units which had been issued to Zaycon members was 5,500,000 when in fact it was at least 10,225,000.

***Material Misrepresentations Made During the June and July, 2014 Meetings***

47.     Certain of the fraudulent, reckless and/or negligent misrepresentations were made during meetings between Braddock and Maresca and Giunta which took place in Braddock's office in New York City.  The first of these meetings took place during or about early June, 2014.  The second took place on June 13, 2014.  The third took place on July 10, 2014 (the "June and July, 2014 Meetings").

48.     The misrepresentations made by Maresca and Giunta at the June and July, 2014 Meetings were made on behalf of themselves and Zaycon and the other Individual Defendants.

49.     During these meetings Maresca and Giunta falsely stated that Zaycon, under the leadership of CEO Conrad and with the support of Kremin, was close to raising money from other prospective investors at a $38 million valuation level.  In fact, Maresca and Giunta knew that Zaycon was not close to raising money from other investors at a $38 million valuation level.

50.     During these meetings Maresca and Giunta falsely stated that Giunta had recently invested in Zaycon at a $25 million valuation level.  In fact, Maresca and Giunta knew that Giunta had recently invested at a much lower valuation level resulting in his receipt of far more shares than implied by this false statement.

51.     During these meetings Maresca and Giunta falsely stated that if Braddock invested quickly he would be given the opportunity to invest at a discount relative to the other prospective investors with whom Zaycon was in serious discussions.  In fact, Maresca and

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Giunta knew that there were no such other investors with whom Zaycon was in serious discussions.

52. During these meetings Maresca and Giunta falsely stated that if Braddock invested quickly he would be given the opportunity to invest at the same valuation level as the level at which Giunta had invested. In fact, Maresca and Giunta had no intention of allowing Braddock to invest at this valuation level.

53. During these meetings Maresca and Giunta falsely stated that an accurate capitalization chart was in the process of being prepared and that it would be provided to Braddock as soon as it was ready. In fact, Maresca and Giunta had no intention of providing Braddock with an accurate capitalization chart as it would have revealed the true capitalization structure of the Company.

*Material Misrepresentations Made By Email In June 2014*

54. Certain of these fraudulent, reckless and/or negligent misrepresentations were contained in a June 6, 2014 email from Maresca to Braddock (the "June 6, 2014 Email").

55. The June 6, 2014 Email was copied to Giunta.

56. The misrepresentations contained in the June 6, 2014 Email were made by Maresca on behalf of Zaycon and Giunta and the other Individual Defendants.

57. The June 6, 2014 Email reiterated the false representation made during the June and July 2014 Meetings that Zaycon was attempting to raise money from other prospective investors at a $38 million valuation level. In particular, the June 6, 2014 Email falsely stated that the "current offer" made to other investors was an offer to invest at a valuation level of "38 million" dollars. In fact, Defendants knew that there were no such other investors with whom

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Zaycon was in serious discussions about an investment at a valuation level of $38 million.

58.     The June 6, 2014 Email falsely stated that Zaycon stock was trading at $2.25 per share and that Defendants were trying to close their deal at 25 million shares, meaning that the Company's additional value could be in excess of $50 million.  In fact, Defendants knew that the stock of Zaycon was not trading at $2.25 per share.

59.     The June 6, 2014 Email falsely stated that Braddock would be given the opportunity to invest at a valuation level of $25 million and that this meant that Braddock could receive a premium relative to the other investors with whom Zaycon was in discussion.  In fact, Defendants knew that if Braddock invested at this valuation level Braddock would not be receiving a premium relative to other investors.

***Material Omissions Made During the June and July, 2014 Meetings and in the June 6, 2014 Email***

60.     During the June and July, 2014 Meetings and in the June 6, 2014 Email Maresca and Giunta failed to disclose that Giunta had invested $1,000,000 in Zaycon during November 2013 at a valuation level of approximately $6 million.

61.     During these meetings and in this email Maresca and Giunta failed to disclose that Zaycon had given Giunta an option to invest another $1,000,000 in Zaycon between December 1, 2013 and November 30, 2014 at a $3 million valuation level.

62.     During these meetings and in this email Maresca and Giunta failed to disclose that Zaycon had given Giunta an option to invest another $1,000,000 in Zaycon between December 1, 2014 and November 30, 2015 at a $4 million valuation level.

63.     During these meetings and in this email Maresca and Giunta failed to disclose that Zaycon had issued a pair of $250,000 convertible notes to Giunta during late April 2014

BRADDOCK'S FIRST AMENDED COMPLAINT - 13
NO. 2:16 cv 1756

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1592599.03

and that these instruments gave Giunta the right to convert his debt into equity at a valuation level of $3 million.

64.     During these meetings and in this email Maresca and Giunta failed to disclose that Zaycon had given Zaycon Food Food Holding and Acquisition Corp. ("Zaycon Holding"), which Maresca and Giunta owned jointly, the right to convert debt into equity at a price of $0.25 per unit, a price that would be substantially dilutive to Plaintiff.

65.     Maresca's and Giunta's non-disclosures respecting the pricing and valuation levels provided to Zaycon insiders rendered their representations that Zaycon was close to raising money from other prospective investors at a $38 million valuation level false and misleading.

66.     Maresca's and Giunta's non-disclosures respecting the pricing and valuation levels provided to Zaycon insiders rendered their representations that Giunta had recently invested in Zaycon at a $25 million valuation level false and misleading.

67.     Maresca's and Giunta's non-disclosures respecting the pricing and valuation levels provided to Zaycon insiders rendered their representations that Braddock would be given the opportunity to invest at the same valuation level as the level at which Giunta had invested false and  misleading.

68.     Maresca's and Giunta's non-disclosures respecting the pricing and valuation levels provided to Zaycon insiders rendered their representations that an accurate capitalization chart was in the process of being prepared and that it would be provided to Braddock as soon as it was ready false and misleading.

69.     During these meetings and in this email Maresca and Giunta failed to disclose

BRADDOCK'S FIRST AMENDED COMPLAINT - 14
NO. 2:16 cv 1756

1592599.03

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

that the DFI had initiated an action against Conrad in 2009.

70.     During these meetings and in this email Maresca and Giunta failed to disclose that the DFI had issued a Cease and Desist Order as to Conrad in January 2010.

71.     During these meetings and in this email Maresca and Giunta failed to disclose that the DFI had initiated an action against Kremin in 2009.

72.     During these meetings and in this email Maresca and Giunta failed to disclose that the DFI had issued a Cease and Desist Order as to Kremin in January 2010.

73.     During these meetings and in this email Maresca and Giunta failed to disclose that Conrad had filed for personal bankruptcy in 2010.

74.     Investors are wary of investing in companies being run by individuals who have been ordered to cease and desist from violating the anti-fraud provisions of the securities laws.

75.     Investors are wary of investing in companies being run by individuals who have filed for personal bankruptcy.

76.     Accordingly, Maresca's and Giunta's non-disclosures respecting the DFI proceedings against Conrad and Kremin and respecting Conrad's bankruptcy rendered their representations that Zaycon was close to raising money from other prospective investors at a $38 million valuation level false and misleading.

77.     During these meetings and in this email Maresca and Giunta failed to disclose that Conrad had been given his interest in the Company for little or no consideration.

78.     During these meetings and in this email Maresca and Giunta failed to disclose that Kremin had been given his interest in the Company for little or no consideration.

79.     During these meetings and in this email Maresca and Giunta failed to disclose

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1    that Maresca had been given his interest in the Company for little or no consideration.

2        80.    Investors regard whether founders have invested in their companies as highly

3    material.

4        81.    Accordingly, Maresca's and Giunta's non-disclosures respecting the fact that

5    Conrad, Kremin and Maresca had been given their interests in the Company for little or no

6    consideration rendered their representations that Zaycon was close to raising money from other

7    prospective investors at a $38 million valuation level false and misleading.

8        82.    All of the misrepresentations and omissions referenced above were material and

9    made with intent to defraud.

10       83.    All of the misrepresentations and omissions referenced above were made to

11   induce Braddock to invest in Zaycon.

12       84.    Zaycon is a manager-managed Washington limited liability company.

13       85.    Conrad became the Manager of Zaycon on or before July 16, 2013.

14       86.    All of the misrepresentations and omissions set forth above were made while

15   Conrad was the Manager of Zaycon.

16       87.    Conrad, Kremin and Maresca were founders and control persons of Zaycon.

17       88.    Giunta was a control person of Zaycon.

18       89.    All of the misrepresentations and omissions set forth above were made with the

19   authorization and approval of Conrad, Kremin, Maresca and Giunta.

20       90.    Articles 2 and 4 of the Operating Agreement assigned to Zaycon's Managing

21   Member(s) the authority to act on behalf of Zaycon in connection with the sale of securities to

22   Braddock.

BRADDOCK'S FIRST AMENDED COMPLAINT - 16
NO. 2:16 cv 1756

1592599.03

91.     As the Manager of Zaycon, Conrad had ultimate authority over the misrepresentations and omissions made by Zaycon and the other Individual Defendants and Conrad was a seller of the securities sold to Braddock.

92.     Conrad signed several of the documents pursuant to which Braddock invested in the securities of Zaycon in reliance on the misrepresentations and omissions of the Defendants, including the Operating Agreement, Braddock's Membership Unit Purchase Agreements of August 21, 2014, December 15, 2014, and September 18, 2015, and the Convertible Promissory Notes of February 3, 2015, May 13, 2015 and June 16, 2015.    All of these documents were signed by Conrad in his capacity as the Manager of Zaycon.

93.     The misrepresentations and omissions of Zaycon and the Individual Defendants were the prevalent factor in inducing the sale of securities to Braddock because, among other things, they caused Braddock to believe that the Company would have access to institutional capital, had strong and capable management, and had a valuation of at least $38 million, and such misrepresentations and omissions had the most significant effect in connection therewith.

94.     There were no intervening causes that disrupted the continuous and active effect of Defendants' wrongful misrepresentations and omissions up to the time of each and every sale of Zaycon securities to Braddock, and the harm thereof was not created by other forces for which the Defendants and each of them were not responsible.

95.     No meaningful lapse of time occurred between Defendants' wrongful misrepresentations and omissions and each of Braddock's purchases of Zaycon securities, and Braddock reasonably relied on Defendants' wrongful misrepresentations and omissions.

96.     Each of the Individual Defendants directly or indirectly controlled Zaycon in

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

connection with the sale of securities to Braddock, and materially aided in such transactions by signing documents, making materially misleading statements and omissions, meeting with Braddock, inducing Braddock to invest in Zaycon, and otherwise effecting a fraud on Braddock.

97.     All Defendants' wrongful misrepresentations and omissions were in furtherance of the fraudulent sale of securities to Braddock.

98.     As founders and control persons of Zaycon, each of the Individual Defendants had ultimate authority over the misrepresentations and omissions made by Zaycon and the other Individual Defendants and each of the Individual Defendants was a seller of and a contributive factor in connection with the sale of the securities sold to Braddock.

99.     On or about August 21, 2014, Braddock invested $1 million dollars in Zaycon and received a) 1,420,987 Class A membership units in Zaycon; and b) an option to purchase 947,325 additional Class A membership units in Zaycon exercisable until December 31, 2025.

100.    Class A membership units in Zaycon are voting units.

101.    From this point onward, the Individual Defendants owed fiduciary duties of care, loyalty and full disclosure to Braddock.

102.    During the late summer and fall of 2014, Conrad, Kremin, Maresca and Giunta, acting on behalf of themselves and Zaycon, repeatedly reassured Braddock that an accurate capitalization chart was in the process of being prepared and that it would be provided to Braddock as soon as it was ready.

103.    During the late summer and fall of 2014, Conrad, Kremin, Maresca and Giunta, acting on behalf of themselves and Zaycon, continued to fail to disclose the truth respecting the valuation levels at which Giunta had invested and at which Giunta had the right to convert debt

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

into equity in Zaycon.

104.   During the late summer and fall of 2014, Conrad, Kremin, Maresca and Giunta, acting on behalf of themselves and Zaycon, continued to fail to disclose the truth respecting the price level at which Zaycon Acquisition had the right to convert debt into equity in Zaycon.

105.   During the late summer and fall of 2014, Conrad, Kremin, Maresca and Giunta, acting on behalf of themselves and Zaycon, continued to fail to disclose the truth respecting the DFI proceedings against Conrad and Kremin and respecting Conrad's bankruptcy.

106.   During the late summer and fall of 2014, Conrad, Kremin, Maresca and Giunta, acting on behalf of themselves and Zaycon, continued to fail to disclose the truth respecting the fact that Conrad, Kremin and Maresca had been given their interests in the Company for little or no consideration.

107.   During the late summer and fall of 2014, Conrad, Kremin, Maresca and Giunta, acting on behalf of themselves and Zaycon, failed to disclose to Braddock that Conrad owned more Zaycon units than the number set forth in Zaycon's operating agreement.

108.   During the late summer and fall of 2014, Conrad, Kremin, Maresca and Giunta, acting on behalf of themselves and Zaycon, failed to disclose to Braddock that Kremin owned more Zaycon units than the number set forth in Zaycon's operating agreement.

109.   During the late summer and fall of 2014, Conrad, Kremin, Maresca and Giunta, acting on behalf of themselves and Zaycon, failed to disclose to Braddock that Maresca owned more Zaycon units than the number set forth in Zaycon's operating agreement.

110.   The Individual Defendants' non-disclosures respecting the extent of their Zaycon holdings was part of a pattern of deception that included the false representation that an accurate

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

capitalization chart would be provided to Braddock.

111.    The Individual Defendants' non-disclosures respecting the extent of their Zaycon holdings rendered their representations that it was their intention to provide Braddock with an accurate capitalization chart and that an accurate capitalization chart was in the process of being prepared and that it would be provided to Braddock as soon as it was ready false and misleading.

112.    On or about December 15, 2014, Braddock invested an additional $500,000 in Zaycon and received 394,741 Class B membership units in Zaycon and an option to purchase 476,190 additional Class B membership units in Zaycon exercisable until December 31, 2024.

113.    Class B membership units in Zaycon are non-voting units.

114.    On or about September 18, 2015, Braddock invested an additional $450,000 in Zaycon and received 478,723 Class A Units in Zaycon.

115.    On or about February 3, 2015, Braddock loaned $500,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 396,825 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until December 31, 2016.

116.    On or about May 13, 2015, Braddock loaned $252,739.73 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 221,702 Class A Units in Zaycon, exercisable until December 31, 2016.

117.    On or about June 16, 2015, Braddock loaned $500,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 434,783 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until June 16, 2025.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

118.     On or about September 24, 2015, Braddock loaned $450,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 489,130 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until September 24, 2025.

119.     On or about December 16, 2015, Braddock loaned $200,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 232,002 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until December 16, 2016.

120.     On or about January 4, 2016, Braddock loaned $300,000 to Zaycon and received a convertible promissory note entitling him to convert all sums owed under the note in exchange for 359,411 Class A Units in Zaycon, plus additional Class A Units in Zaycon on account of accrued interest, exercisable until January 4, 2017.

121.     On or about July 8, 2015, Braddock exercised his conversion option under his February 3, 2015, $500,000 convertible promissory note and received 409,959 additional Class A membership units in Zaycon.

122.     In sum, from August 2014 through January 2016, Braddock invested $2,450,000 in Zaycon and provided over $1,702,000 of convertible debt to Zaycon.

123.     This made Braddock Zaycon's largest investor by far.

124.     All of Braddock's investments and loans were made in reliance on representations made in the Operating Agreement and during the June and July, 2014 Meetings and in the June 6, 2014 Email and in reliance on misrepresentations and omissions made by Maresca, Giunta, Conrad and Kremin, each of whom was acting on behalf of himself and

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1    Zaycon and the other Individual Defendants.

2        125.    Braddock would not have made his investments and loans in the absence of

3    Defendants' misrepresentations and omissions.

4    ***Braddock Takes a More Active Role in Zaycon***

5        126.    By late September 2015, Braddock began to realize that a number of

6    representations made to him by Maresca, Giunta, Conrad and Kremin, in their individual

7    capacities and on behalf of Zaycon, about the financial and operational strength of Zaycon, had

8

9    been untrue.

10        127.    Among other things, by this point in time Braddock had learned from a third

11   party about the DFI proceedings against Conrad and Kremin and that Conrad and Kremin had

12   been ordered to cease and desist from violating the anti-fraud provisions of the securities laws.

13   Braddock had never been told about the DFI proceedings or about the cease and desist orders

14   by any of the Defendants.

15

16        128.    This gave rise to a leadership vacuum as the Company could not attract

17   investment capital so long as Conrad was the managing member and CEO of the Company.

18        129.    As a result, Maresca, Giunta, Kremin and eventually Conrad himself all agreed

19   that Conrad had to step down as managing member and CEO.

20

21        130.    In addition, each of the Individual Defendants asked Braddock to step in to take

22   a more active role in the Company.

23        131.    Braddock agreed to do so and agreed to serve as co-managing member with

24   Maresca.

25        132.    The parties thereupon agreed that the operating agreement of the Company

26

BRADDOCK'S FIRST AMENDED COMPLAINT - 22
NO. 2:16 cv 1756

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1592599.03

would be amended to provide for two managers, that the managers would be Maresca and Braddock, and that each manager would serve "until his or her death, disability, resignation or removal by Members holding at least eighty percent (80%) of the Class A Units".

133.    The operating agreement was so amended and Braddock thereupon became a co-managing member of Zaycon.

134.    The other co-managing member of Zaycon during Braddock's tenure was Defendant Maresca.

135.    On or about October 1, 2015, Braddock also became Zaycon's chief executive officer pursuant to a written agreement promising him, in lieu of salary, the issuance of 250,000 additional Class A membership units in Zaycon for each year of the agreement's three year term, with the first 250,000 units issued to him upon execution thereof.

136.    Under Braddock's leadership, and with the benefit of the capital infusions received from Braddock, Zaycon's revenues grew from $16 million in 2014 to $25 million in 2015, with 2016 revenues projected at $73 million.

137.    By mid-January 2016, Braddock owned 3,184,669 Class A and 394,741 Class B membership units in the Company. In addition, he had the option and the means to purchase 947,325 additional Class A and 476,190 Class B membership units in the Company. He also had the right to convert the Company's indebtedness to him into up to 1,528,226 additional Class A membership units in the Company, as well as to receive certain additional Class A conversion units on account of accrued interest.

***Zaycon Seeks Additional Investments***

138.    Once Braddock had put Zaycon on firm footing, the Company determined that

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

the time was right to seek either additional investment or the sale of the Company.

139.    During or about late 2015 or early 2016, Zaycon retained Vertical Group ("Vertical") to provide investment banking services to the Company. Michael Shwarts ("Shwarts") was the Vertical investment banker assigned to the engagement.

140.    During or about January 2016, Vertical and Shwarts prepared an investor presentation for Zaycon featuring Braddock as its CEO and Chairman of the Board and highlighting his unique background and qualifications.

141.    Vertical's investor presentation referred to Braddock as the "seasoned" leader of Zaycon's management team, described him as an "experienced CEO in the e-commerce and food industries" and touted both his directly relevant experience as the former chairman and CEO of Priceline.com and FreshDirect and his more general high level experience in business and finance, including that gained as the former president and COO of Citicorp and Citibank, N.A.

142.    In addition, the Vertical investor presentation noted that Zaycon's year to year sales growth during the years 2014 to 2016 (the years of Braddock's involvement) were 20.9%, 50.9% and 193.6% (projected), respectively.

143.    On or about April 14, 2016, a private equity firm based in Boston, Massachusetts by the name of Great Hill Partners ("Great Hill") submitted a proposal to make an investment of $25 million to buy into Zaycon at a pre-money enterprise valuation of $30 million.

144.    The Great Hill proposal contemplated that $10 million would be used to buy equity from existing members of Zaycon and that $15 million would be invested directly into the Company.

BRADDOCK'S FIRST AMENDED COMPLAINT - 24
NO. 2:16 cv 1756

**RS** Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1592599.03

145.    Braddock advised Defendants and Vertical and Shwarts that he believed that the Great Hill deal could be improved through negotiation but that he was strongly in favor of coming to terms with Great Hill.

146.    Braddock further advised Defendants that he regarded the Great Hill proposal as being more favorable than another proposal the Company had received.

147.    The Great Hill proposal contemplated that Great Hill would acquire 56.5% of Zaycon's fully diluted equity.

148.    This meant that the equity of all existing members of Zaycon would be diluted.

149.    In addition, the Great Hill proposal required Zaycon to be debt-free at the closing of Great Hill's investment.

150.    This meant that Braddock would be required to convert all of his remaining debt to equity.

151.    Despite the Individual Defendants' later false assertions that Braddock was opposed to the deal with Great Hill, Braddock promptly and enthusiastically agreed that all of his convertible debt would be converted to equity.

152.    As a result, Braddock instructed Giunta, who was then Zaycon's CFO, to convert all of Braddock's debt to equity.

153.    In addition, Braddock asked to see the latest version of the operating agreement and an accurate version of the capitalization chart.

154.    Giunta thereupon falsely promised and undertook to provide Braddock with an accurate capitalization chart and the other paperwork necessary to enable Braddock to effectuate the conversion of his debt to equity.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

155.    Defendants Maresca, Giunta, Conrad and Kremin understood that Zaycon was desperately in need of a capital infusion.

156.    However, they feared that Great Hill's investment would change the power structure in the Company.

157.    In particular, Defendants Maresca, Giunta, Conrad and Kremin feared that with Great Hill and Braddock being the largest investors in the Company, and with Braddock exercising management control in his capacity as co-managing member and CEO, they would no longer be able to control the Company.

158.    Defendants Maresca, Giunta, Conrad and Kremin also recognized that Braddock's conversion of his debt to Class A equity as required by Great Hill would increase Braddock's voting power.

### *Conspiracy to Oust Braddock*

159.    Accordingly, Defendants Maresca, Giunta, Conrad and Kremin commenced looking for a way to oust Braddock but to maintain the interest of Great Hill.

160.    To that end, Defendants Maresca, Giunta, Conrad and/or Kremin discussed with Vertical and Shwarts whether Great Hill would complete the contemplated transaction even if they fired Braddock.

161.    Vertical and Shwarts had touted Braddock's skills and experience in order to interest Great Hill in Zaycon in the first place.

162.    In addition, Vertical and Shwarts knew or should have known that private equity firms look for experience, leadership and "skin in the game" before committing significant capital.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

163.    On the other hand, Shwarts and Vertical wanted to oust Braddock because Shwarts understood that Braddock was losing confidence in Shwarts's ability to successfully perform his duties as an investment banker for Zaycon.

164.    Upon information and belief, in an attempt to oust Braddock and protect their investment banking fees, and in the face of increasing division within the Company, Vertical and Shwarts told Maresca, Giunta, Conrad and/or Kremin that they could close the Great Hill deal without Braddock.

165.    Several days later Shwarts went so far as to tell Defendants that Braddock was not needed because Shwarts was prepared to assume the role of CEO of Zaycon

166.    As a result, although it had been Braddock's leadership and money which had put Zaycon on a trajectory to raise investment capital and to fulfill its potential in the first place, Defendants Zaycon, Maresca, Giunta, Conrad and Kremin decided to immediately terminate both Braddock's employment and his status as co-managing member of the Company.

167.    Simultaneously, Defendants Zaycon, Maresca, Giunta, Conrad and Kremin decided to delay providing Braddock with an accurate capitalization chart and the other paperwork necessary for Braddock to implement the conversion of his debt to equity as had been required by Great Hill and agreed to by the parties.

168.    By this point in time all Defendants had agreed repeatedly that Braddock would be given an accurate capitalization chart.

169.    In addition, all Defendants had agreed that the Operating Agreement would be amended to give voting rights to the holders of B units in the Company.

170.    However, rather than honoring their commitments, Defendants responded

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

through Giunta and with the concurrence of Braddock's co-managing member Maresca to Braddock's requests made days before his removal from management for the latest version of the operating agreement and an accurate version of the capitalization chart by covering up the fact that new versions of these documents had been completed and were available and by sending Braddock prior versions of the documents.

171.   As a result, Defendants failed to send Braddock and failed to implement an agreed upon Fifth Amendment to the Second Amended and Restated Operating Agreement which would have given voting rights to the holders of B units in the Company and thus increased Braddock's voting power and decreased Defendants' voting power.

172.   Likewise, Defendants failed to send Braddock and failed to implement an agreed upon Third Amended Operating Agreement which would have given voting rights to the holders of B units in the Company and thus increased Braddock's voting power and decreased Defendants' voting power.

173.   Defendants went so far as to withhold the draft of the Third Amended Operating Agreement from Braddock.

174.   In addition, Giunta, acting on behalf of all Defendants, provided Braddock with capitalization charts which were manifestly inaccurate and out of date.

175.   Among other things, the capitalization tables provided to Braddock failed to include any provision for accrued interest on Braddock's loans to the Company.

176.   In addition, although the most recent version of their capitalization chart reflected the fact that Braddock owned over 20% of the Company on a fully diluted basis, Defendants sent Braddock prior versions which failed to reveal the true extent of Braddock's ownership.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

177.   To remove Braddock as co-managing member under the Company's Operating Agreement, Defendants Maresca, Giunta, Conrad and Kremin needed 80% of the eligible, voting Class A Units to vote for Braddock's removal.

178.   On or about April 19 and 20, 2016, Defendants Maresca, Giunta, Conrad and Kremin prepared and signed a document denominated a Consent of Members (the "Consent") resolving that Braddock was to be removed as a manager of Zaycon.

179.   In addition, Defendants obtained the signatures of several other members of Zaycon on the Consent.

180.   On April 21, 2016, without any advance notice or warning of their intentions, Defendants Maresca and Giunta informed Braddock that the holders of at least 80% of the Class A membership units of Zaycon had voted to remove him as a manager, and that he was being terminated as an employee.

181.   Defendants' termination of Braddock's status as co-managing member and termination of his employment as CEO was wrongful for several reasons.

182.   As the largest single investor in and largest lender to the Company, Braddock had the right to vote over 20% of the voting units of the Company.  Doing so would have prevented Braddock's termination as CEO and co-managing member.

183.   Indeed, it was the manipulation of the capitalization structure and capitalization chart of the Company by Defendants Maresca, Giunta, Conrad and Kremin that allowed these Defendants to take the incorrect position that they had 80% of the Class A votes, which would have been necessary to effectuate Braddock's removal as co-managing member.

184.   The manipulation of the Zaycon capitalization structure by Defendants Maresca,

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Giunta, Conrad and Kremin included failing to properly record all of Braddock's membership units in the Company's capitalization chart.

185.    The manipulation of the Zaycon capitalization structure by Defendants Maresca, Giunta, Conrad and Kremin also included issuing vast quantities of membership units to individuals who had invested no money in the Company, including themselves, the fact of which was concealed from Braddock. The issuance of over 3,000,000 Class A membership units to Conrad and over 3,000,000 Class A membership units to Kremin and over 1,750,000 Class A membership units to Maresca was for no cash consideration. In addition, and to the extent that these issuances were for services allegedly performed, they were vastly disproportionate in amount as compared to the 250,000 units of equity issued for services to Braddock in lieu of salary in consideration of his employment as CEO.

186.    Defendants manipulated the voting process that resulted in the execution of the Consent by fraudulently inducing certain Zaycon members to vote for Braddock's removal, thereby improperly purporting to obtain the 80% majority necessary to oust Braddock as a co-managing member under the Operating Agreement.

187.    Specifically, to get the signatures of other members of Zaycon on the Consent, Defendants falsely and fraudulently told these other members that Braddock was opposed to the deal with Great Hill and that he would kill it.

188.    In the case of Zaycon member Nathan Brown, who owned 1,500,000 voting units representing over 5% of the equity of Zaycon, Defendants Conrad and Giunta each called him to urge him to vote for the removal of Braddock on the alleged grounds that Braddock would sabotage the deal with Great Hill. In each instance, Brown withheld his consent. It was only

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

when he received a third call telling him that Braddock was opposed to the deal with Great Hill – this one from Shwarts – that Brown concluded that the allegations against Braddock must be true and that he agreed to sign the Consent.

189.   Defendants further manipulated the voting process by conducting the purported vote in secret without a meeting or even notice or any opportunity for a discussion during which Braddock could have set the record straight and been heard by his fellow members before they voted.

190.   Defendants acted wrongfully by withholding information and documents from Braddock which he needed in order to effectuate his already announced intended exercise of his right to convert the debt owed to him into Class A voting equity, and to exercise his option to buy additional Class A membership units. Braddock's conversion of his debt to Class A voting equity as required by Great Hill and his purchase of additional Class A membership units would have deprived Defendants of their purported 80% voting majority. Accordingly, by failing to provide Braddock with an accurate capitalization chart and the other paperwork he required, Defendants prevented Braddock from exercising his conversion rights and purchasing additional Class A units in time to vote against, and thus prevent, his ouster as co-managing member.

191.   In addition, a large portion of the units voted for the removal of Braddock were held by an entity by the name of The Michael John Trust. The units owned by The Michael John Trust were non-voting units.  As a result, the votes by The Michael John Trust to remove Braddock as manager were invalid.

192.   Similarly, a portion of the units voted for the removal of Braddock were held by certain additional investors associated with Giunta by the name of Solimeo (the "Solimeo

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Investors"). The units owned by the Solimeo Investors were non-voting units. As a result, the votes by these additional investors to remove Braddock as manager were invalid.

193.    Likewise, a portion of the units voted for the removal of Braddock were held by an entity by the name of The Saratoga Trust. Upon information and belief, the units owned by the Saratoga Trust were non-voting units. As a result, the votes by The Saratoga Trust to remove Braddock as manager were invalid.

194.    At the time of Braddock's removal the Michael John Trust owned over 30.62 % of the Class A Units of the Company.

195.    Without The Michal John Trust block of votes, and irrespective of the other manipulations referenced above, the Defendants did not have anywhere close to the 80% majority vote required by the Zaycon Operating Agreement to remove Braddock as a co-managing member.

196.    At the time of Braddock's removal the Solimeo Investors owned over 3.7% of the Class A Units of the Company.

197.    Without the block of votes held by the Solimeo Investors, the Defendants did not have the 80% majority vote required by the Zaycon Operating Agreement to remove Braddock as a co-managing member.

198.    At the time of Braddock's removal the Saratoga Trust owned over 7.09% of the Class A Units of the Company.

199.    Without The Saratoga Trust block of votes, the Defendants did not have the 80% majority vote required by the Zaycon Operating Agreement to remove Braddock as a co-managing member.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1592599.03

200.     As a result of the foregoing, the purported removal of Braddock as a co-managing member of Zaycon was wrongful and of no force or effect and was null and void from the outset.

201.     As a further result of the foregoing, Braddock's removal as CEO was wrongful and of no force or effect.

202.     As a further result of the foregoing, the actions taken by Zaycon's purported management since the time of Braddock's wrongful removal have been *ultra vires*.

203.     In short, after Braddock had put Zaycon on an impressive trajectory, Defendants conspired to and did wrongfully remove him as co-managing member, which in turn purportedly enabled the remaining managing member and the replacement managing member to terminate his employment contract.

204.     Defendants Maresca, Giunta, Conrad and Kremin did so in order to further their own self-interest and to maintain control of the Company, despite the fact that it would have been in the best interests of the Company to retain Braddock and to complete the Great Hill transaction.

205.     Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that Braddock had been bankrolling the Company for them.

206.     Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that their own investments in the Company were smaller than Braddock's or non-existent.

207.     Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that they had utilized Braddock's involvement and investment in Zaycon to elicit Great Hill's interest in the first place.

208.     Defendants Maresca, Giunta, Conrad and Kremin did so in the misguided belief

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1   that Great Hill would proceed with its investment even after Braddock had been removed from

2   management.

3         209.    Defendants Maresca, Giunta, Conrad and Kremin did so despite the fact that the

4   Company's interference with Braddock's conversion of his debt to equity prevented the

5   Company from being debt free as required by Great Hill.

6

7         210.    Zaycon's April 21, 2016 letter to Braddock notifying him of the termination of

8   his employment and of his status as co-managing member stated that Giunta had been appointed

9   as a replacement manager.

10        211.    On or about June 30, 2016 Giunta resigned as a co-manager.  Giunta has admitted

11  during his deposition that when he left Zaycon the Company's cap table was not complete.

12

13        212.    Maresca now runs the Company as its sole managing member, on a part time

14  basis.

15        213.    Maresca now runs the Company without providing adequate disclosure to

16  Braddock.

17        214.    After the removal of Braddock as a co-manager and the termination of his

18  employment contract as CEO, Great Hill declined to invest in Zaycon.

19        215.    This left the Company starved for necessary capital to expand and grow and on

20  the verge of insolvency.

21

22        216.    On or about June 27, 2016, Braddock brought a new private equity financing

23  proposal to the Company from a private equity firm by the name of Spring Lake Equity Partners

24  ("Spring Lake").

25        217.    The Spring Lake Proposal contemplated the investment of $7 million of

26

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

desperately needed fresh capital into Zaycon.

218.    Defendants rejected the Spring Lake proposal out of hand.

219.    In addition, although Spring Lake asked Defendants for a counter-proposal, Defendants refused to provide one.

220.    Defendants' actions have caused the Company to lose two excellent financing opportunities, either of which could have provided the Company with the capital necessary to allow it to grow and flourish.

221.    Defendants' actions have deprived the Company of much needed capital and experienced leadership.

222.    Since the wrongful removal of Braddock as a co-manager and the wrongful termination of his employment contract, Defendants have failed to apprise Braddock of significant developments affecting both his interest in the Company and the Company itself.

223.    Likewise, since the wrongful removal of Braddock as a co-manager and the wrongful termination of his employment contract, Defendants have prevented or sought to prevent Braddock from obtaining information and documents about Zaycon by interfering with Braddock's attempts to obtain such information and documents from other Zaycon owners and employees.

224.    Braddock brings this action to recover damages for violations of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, Washington State securities laws, common law fraud, negligence, breach of contract, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty in an amount to be established at trial in excess of $6.5 million.

225.    In addition, Braddock seeks a) declaratory relief stating that his removal as a

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

managing member of the Company and his removal as CEO were wrongful and of no force or effect and that actions taken by Zaycon's purported management since that time have been *ultra vires*; b) declaratory relief stating that some or all of the Zaycon membership units issued to the individual defendants for no consideration are void; c) injunctive relief reinstating Braddock as a managing member of the Company and as CEO; and d) injunctive relief prohibiting the Company from taking any steps to recapitalize, merge or sell the Company until such time as Braddock has been reinstated as a managing member of the Company.

## VI. FIRST CLAIM
### (Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5)

226.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

227.    Zaycon, through its managers, employees, agents and/or members (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make their statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Braddock.

228.    Zaycon and the Individual Defendants directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct involving materially false and misleading statements, to mislead and defraud Braddock.

229.    Certain of these misrepresentations were fraudulently contained in the June 6, 2014 Email.

230.    Certain of these misrepresentations were fraudulently contained in the Operating

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1   Agreement.

2   231.   Certain of these misrepresentations were fraudulently made during the June and

3   July, 2014 Meetings.

4   232.   In the June 6, 2014 Email and during the June and July, 2014 Meetings,

5   Defendants failed to disclose the pricing and valuation levels provided to Zaycon insiders,

6   failed to disclose the DFI proceedings against Conrad and Kremin and Conrad's bankruptcy,

7   and failed to disclose the fact that Conrad, Kremin and Maresca had been given their interests

8   in the Company for little or no consideration.

9   233.   Each of Braddock's decisions to acquire Zaycon securities was made in reliance

10   on the misrepresentations and omissions by the Defendants.

11   234.   The misrepresentations and omissions used to solicit or induce Braddock to

12   invest and/or loan money into and for Zaycon were respectively false and fraudulent, or operated

13   as a falsehood and a fraud on Braddock.

14   235.   Braddock's agreements to invest in Zaycon and to loan money to Zaycon were

15   made in reliance on the fraudulent misrepresentations and omissions of the Defendants.

16   236.   The fraudulent misrepresentations and omissions were material.

17   237.   At the time Defendants made the above referenced fraudulent misrepresentations

18   and omissions Defendants knew that they were fraudulent.

19   238.   Defendants made the fraudulent misrepresentations and omissions with the intent

20   to deceive Braddock.

21   239.   Defendants made the fraudulent misrepresentations and omissions with intent to

22   induce Braddock to join Zaycon and to invest in Zaycon.

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

240.    Defendants made the fraudulent misrepresentations and omisisons with reckless disregard for truth or falsity.

241.    Braddock reasonably relied upon the fraudulent misrepresentations and omissions to his detriment.

242.    Each of the fraudulent misrepresentations and omissions by the Defendants caused Braddock to sustain damages.

243.    The allegations set forth above establish a strong inference that the Defendants acted with scienter in that they had actual knowledge of the misrepresentations and omissions, or acted with reckless disregard for the truth in that they failed to ascertain and disclose material facts.  Defendants' material misrepresentations were made knowingly and/or with recklessness disregard for the truth and for the purpose and with the effect of concealing the truth from Braddock.

244.    Braddock has been caused to sustain losses and damages as a result of Defendants' misrepresentations and omissions.

245.    At the time of Defendants' materially false representations and omissions, Braddock was ignorant of the falsity of the representations and omissions made by Defendants.

246.    As a direct and proximate result of Defendants' wrongful conduct, Braddock has sustained damages in connection with his interest in Zaycon in an amount to be established at trial in excess of $6,500,000.

## VII. SECOND CLAIM
### (Violation of RCW 21.20.010 – Unlawful Offers, Sales and Purchases of Security)

247.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.



248.   Zaycon was a seller of Zaycon securities to Braddock for purposes of RCW 21.20.010.

249.   In connection with the sales of securities to Braddock and the purchase of securities by Braddock in Zaycon, Zaycon through its managers, employees, agents and/or members violated RCW 21.20.010 by directly or indirectly making untrue statements of material fact and/or omitting to state  material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and by engaging in acts, practices, or a course of business which operated as a fraud or deceit upon Braddock.

250.   Certain of these misrepresentations were fraudulently contained in the June 6, 2014 Email.

251.   Certain of these misrepresentations were fraudulently contained in the Operating Agreement.

252.   Certain of these misrepresentations were fraudulently made during the June and July, 2014 Meetings.

253.   In the June 6, 2014 Email and during the June and July, 2014 Meetings, Defendants failed to disclose the pricing and valuation levels provided to Zaycon insiders, failed to disclose the DFI proceedings against Conrad and Kremin and Conrad's bankruptcy, and failed to disclose the fact that Conrad, Kremin and Maresca had been given their interests in the Company for little or no consideration.

254.   Defendants made these and the other misrepresentations alleged above.

255.   Defendants made the omissions alleged above.

256.   Defendants acted with intent to defraud Braddock.

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

257.   Braddock did not know of the misrepresentations and omissions.

258.   Defendants misrepresentations and omissions were material to the purchase of Zaycon securities by Braddock.

259.   Braddock reasonably relied on Defendants misrepresentations and omissions.

260.   Braddock would not have purchased Zaycon securities but for Zaycon's misrepresentations and omissions.

261.   The Individual Defendants and each of them are jointly and severally liable as sellers under the operation of RCW 21.20.430(1) in combination with RCW 21.20.010.

262.   The Individual Defendants and each of them are jointly and severally liable as control persons under RCW 21.20.430(3) in combination with RCW 21.20.010.

263.   Braddock has suffered damages proximately caused by Defendants violations of RCW 21.20.010 in an amount to be established at trial in excess of $6,500,000.

## VIII. THIRD CLAIM
### (Fraud Claim Against All Defendants)

264.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and length herein.

265.   Defendants made written and oral misrepresentations and omissions to Braddock in an effort to solicit Braddock's financial and managerial involvement in Zaycon.

266.   Certain of these misrepresentations were fraudulently contained in the June 6, 2014 Email.

267.   Certain of these misrepresentations were fraudulently contained in the Operating Agreement.

268.   Certain of these misrepresentations were fraudulently made during the June and

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

July, 2014 Meetings.

269.     In the June 6, 2014 Email and during the June and July, 2014 Meetings, Defendants failed to disclose the pricing and valuation levels provided to Zaycon insiders, failed to disclose the DFI proceedings against Conrad and Kremin and Conrad's bankruptcy, and failed to disclose the fact that Conrad, Kremin and Maresca had been given their interests in the Company for little or no consideration.

270.     Each of Braddock's decisions to acquire Zaycon securities was made in reliance on the misrepresentations and omissions made by Defendants.

271.     The misrepresentations and omissions used to solicit or induce Braddock to invest and/or loan money into and for Zaycon made by Defendants were false.

272.     Braddock would not have invested in Zaycon but for the misrepresentations and omissions made by Defendants.

273.     Braddock's agreements to invest in Zaycon and to loan money to Zaycon were made in reliance on the fraudulent misrepresentations and omissions made by Defendants.

274.     The fraudulent misrepresentations and omissions made by Defendants were material.

275.     At the time Defendants made the above referenced fraudulent misrepresentations and omissions, Defendants knew that their misrepresentations and omissions were fraudulent.

276.     Defendants made their fraudulent misrepresentations and omissions with the intent to deceive Braddock.

277.     Defendants made their fraudulent misrepresentations and omissions with intent to induce Braddock to join Zaycon and to invest in Zaycon.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

278.     Defendants made their fraudulent misrepresentations and omissions with reckless disregard for truth or falsity.

279.     Braddock reasonably relied upon the fraudulent misrepresentations and omissions made by Defendants to his detriment.

280.     Each of the fraudulent misrepresentations and omissions made by Defendants caused Braddock to sustain damages.

281.     The wrongdoing of Defendants was intentional, wanton, outrageous, morally culpable, and perpetrated with wrongful, reckless and malicious disregard for the rights of Zaycon and its members, including Braddock.

282.     As a direct and proximate result of Defendants' wrongful conduct, Braddock has sustained damages in connection with his interest in Zaycon in an amount to be established at trial in excess of $6,500,000.

## IX. FOURTH CLAIM
### (Negligent Misrepresentation Against All Defendants)

283.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

284.     Defendants had a duty to provide Braddock with complete and accurate information respecting Zaycon, including but not limited to information respecting its capitalization, prospects, risks and ownership.

285.     Defendants negligently supplied Braddock with false and misleading information respecting Zaycon's capitalization, prospects, risks and ownership prior to each of Braddock's investments and loans into Zaycon.

286.     Braddock relied on the materially false and misleading statements and/or the

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

non-disclosure of material adverse facts by Defendants in making his investments in Zaycon from August 2014 through January 2016.

287.    Braddock's reliance on the materially false and misleading statements made by Defendants and/or on their non-disclosure of material adverse facts was reasonable and justified.

288.    The false and misleading information supplied and furnished by Defendants was the proximate cause of the damages sustained by Braddock.

289.    As a direct and proximate result of Defendants' wrongful conduct, Braddock has sustained damages in connection with his interest in Zaycon in an amount to be established at trial in excess of $6,500,000.

## X. FIFTH CLAIM
### (Breach of Fiduciary Duty)

290.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

291.    Plaintiff asserts this claim against Defendants Maresca, Giunta and Conrad.

292.    As managers and control persons of Zaycon, Maresca, Giunta and Conrad owed fiduciary duties of loyalty, due care, good faith/fair dealing, candor and full disclosure of all material facts to the Company and to its members and to Braddock in his capacity as a member and as a co-managing Member of Zaycon.

293.    Braddock reasonably and justifiably reposed his trust and confidence in Maresca, Giunta and Conrad to properly perform their duties in connection with the Company and to deal fairly and act with loyalty, due care and candor and in good faith and to provide full disclosure.

294.    Maresca, Giunta and Conrad breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Zaycon and Braddock by making

BRADDOCK'S FIRST AMENDED COMPLAINT - 43
NO. 2:16 cv 1756

1592599.03

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

fraudulent misrepresentations and omissions to Braddock.

295.     Maresca, Giunta and Conrad breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Zaycon and Braddock by repeatedly misrepresenting that an accurate capitalization chart was in the process of being prepared and would be provided to Braddock as soon as it was ready.

296.     Maresca, Giunta and Conrad breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Zaycon and Braddock by issuing Zaycon units to one another and to Kremin for little or no consideration.

297.     Maresca, Giunta and Conrad breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Zaycon and Braddock by (i) conspiring to terminate Braddock's employment contract and his status as co-managing Member of the Company for their own self-interested reasons; (ii) manipulating the Zaycon capitalization structure; (iii) manipulating the voting process that resulted in the execution of the Consent; (iv) withholding information from Braddock which he needed in order to convert the debt owed to him into Class A voting equity and to exercise his options to buy additional Class A membership units; (v) failing to implement an agreed upon amendment to the Second Amended and Restated Operating Agreement which would have given voting rights to the holders of B units in the Company; (vi) failing to implement an agreed upon Third Amended Operating Agreement which would have given voting rights to the holders of B units in the Company; and (vii) withholding a draft of the Third Amended Operating Agreement from Braddock.

298.     Maresca, Giunta and Conrad breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Zaycon and Braddock by withholding data

BRADDOCK'S FIRST AMENDED COMPLAINT - 44
NO. 2:16 cv 1756

1592599.03

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

from Braddock reflecting the fact that his ownership of the Company on a fully diluted basis exceeded 20%.

299.    Maresca, Giunta and Conrad breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Zaycon and Braddock by removing Braddock from his position as a managing member based upon the vote of less than the required 80% of the units entitled to vote in accordance with the Company's operating agreement by counting non-voting units as if they were voting units, including but not limited to units owned by a trust set up by the family of defendant Giunta.

300.    Maresca, Giunta and Conrad breached their fiduciary duties of loyalty, due care, good faith/fair dealing, candor, and full disclosure to Zaycon and Braddock by (i) allowing Maresca to run the Company as its sole managing member in violation of Section 4.1 of the Operating Agreement, which states that "[t]he Company shall be managed by two managers"; (ii) acting in their own self-interest and contrary to the best interests of Zaycon in an effort to retain control of a company in which they had made little or no investment; (iii) sabotaging the prospect of an investment by Great Hill by terminating Braddock's status as co-managing member and as CEO and by interfering with the elimination of the Company's debt for their own self-interested reasons only days after receiving the Great Hill proposal and notwithstanding Great Hill's requirement that the Company be debt free at closing; (iv) refusing even to negotiate with Spring Lake or otherwise to consider or make any effort to obtain an equity investment from Spring Lake; (v) failing to apprise Braddock of significant developments affecting both his interest in the Company and the Company itself; and (vi) preventing or seeking to prevent Braddock from obtaining information and documents about Zaycon by

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

interfering with Braddock's attempts to obtain such information and documents from other Zaycon owners and employees.

301.    Maresca, Giunta and Conrad have acted in bad faith and in a manner inconsistent with their fiduciary duties.

302.    The breaches of their fiduciary duties by Maresca, Giunta and Conrad have been the proximate cause of Braddock's damages.

303.    As a direct and proximate result of Defendants' wrongful conduct, Braddock has sustained damages in connection with his interest in Zaycon in an amount to be established at trial in excess of $6,500,000.

## XI. SIXTH CLAIM
### (Breach of Contract)

304.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

305.    Plaintiff asserts this claim against all Defendants.

306.    At all times mentioned, Zaycon and its members operated the Company pursuant to the Operating Agreement.

307.    The Operating Agreement contained an implied covenant of good faith and fair dealing.

308.    Braddock's employment contract contained an implied covenant of good faith and fair dealing.

309.    Braddock has fulfilled and performed all the terms and conditions required of him by the terms of the Operating Agreement and of his employment contract.

310.    Braddock was a co-Managing Member of the Company.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

311.    The Operating Agreement provided that a Managing Member was to serve until his death, disability, resignation or removal by Members holding at least eighty percent (80%) of the Class A Units.

312.    Defendants breached the Operating Agreement by removing Braddock from his position as a Managing Member based upon the vote of less than the required 80% of the units entitled to vote in accordance with the Company's Operating Agreement by counting non-voting units as if they were voting units.

313.    Defendants breached the Operating Agreement by appointing Giunta as a replacement Manager to fill a seat that was not vacant.

314.    Defendants breached the Operating Agreement and Braddock's employment contract by firing Braddock without the unanimous consent of the duly seated Managing Members of the Company.

315.    Defendants have breached the covenant of good faith and fair dealing contained in Braddock's employment contract.

316.    Defendants have breached the covenant of good faith and fair dealing contained in the operating agreement.

317.    As a result of the foregoing, Plaintiff Braddock is entitled to compensatory damages from Defendants Zaycon, Maresca, Giunta, Conrad and Kremin in an amount to be established at trial in excess of $6,500,000.

## XII. SEVENTH CLAIM
### (Aiding and Abetting Breach of Fiduciary Duty)

318.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

BRADDOCK'S FIRST AMENDED COMPLAINT - 47
NO. 2:16 cv 1756

1592599.03

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

319.     Plaintiff asserts this claim against Defendant Kremin.

320.     Defendants Maresca, Giunta and Conrad breached their fiduciary duties to Zaycon and Braddock.

321.     Defendant Kremin participated in and aided and abetted in the making of misrepresentations and omissions to Braddock.

322.     Defendant Kremin participated in and aided and abetted in withholding information from Braddock.

323.     Defendant Kremin participated in and aided and abetted the ouster of Braddock by advising and conspiring with Maresca, Giunta and Conrad to terminate Braddock's employment and his status as co-managing member of the Company.

324.     Defendant Kremin participated in and aided and abetted the manipulation of the voting process that resulted in the execution of the Consent.

325.     The actions of Kremin have caused Plaintiff Braddock to sustain damages.

326.     As a result of the foregoing, Braddock is entitled to compensatory damages from Kremin in an amount to be established at trial in excess of $6,500,000.

## XIII. EIGHTH CLAIM
### (Declaratory Judgment)

327.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

328.     Defendants Maresca, Conrad, Giunta and Kremin awarded grossly disproportionate numbers of Zaycon membership units to themselves and to friends and family members for little or no consideration.

329.     The issuance of Zaycon membership units to Maresca, Conrad and Kremin for

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

little or no consideration is void.

330.    The issuance of Zaycon membership units to friends and family members of Maresca, Conrad, Giunta and Kremin for little or no consideration is void.

331.    The purported termination of Braddock as manager and Chief Executive Officer, without the required vote of at least 80% of the Class A unit holders was in violation of the Zaycon Operating Agreement and is void; and any action by Zaycon management subsequent to that time is *ultra vires* and void.

332.    This claim raises a justiciable controversy, sufficiently definite and concrete to warrant declaratory relief.

333.    Braddock is entitled to a declaratory judgment that all or part of the Maresca, Conrad and Kremin units in Zaycon are invalid.

334.    Braddock is entitled to a declaratory judgment that all or part of the Zaycon membership units awarded to friends and family members of Maresca, Conrad, Giunta and Kremin for little or no consideration are invalid.

335.    Braddock is entitled to a declaratory judgment that his termination as co-manager and CEO was void because his termination as co-manager was the result of wrongful manipulation and was not approved by at least 80% of the Zaycon Class A unit holders as required by the Zaycon Operating Agreement.

336.    Braddock is entitled to a declaratory judgment that any action taken by Zaycon management subsequent to the void termination of Braddock as manager and CEO was *ultra vires* and void.

## XIV. NINTH CLAIM
## (INJUNCTIVE RELEIF)

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1592599.03

337.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

338.    Braddock was wrongfully removed as co-manager and CEO of Zaycon.

339.    Braddock is entitled to an injunction reinstating Braddock as co-manager and CEO of Zaycon.

340.    Braddock is entitled to an injunction preventing any action to recapitalize, merge or sell Zaycon until such time as Braddock is reinstated as co-manager and CEO of Zaycon.

341.    Braddock has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

1.    Awarding compensatory damages to Plaintiff Braddock in an amount to be determined at trial in excess of $6,500,000.

2.    For a declaratory judgment that Braddock's termination as manager and CEO was void and of no force or effect; that actions taken by Zaycon management subsequent to Braddock's wrongful termination are *ultra vires* and void; and that some or all of the membership units issued to Conrad, Maresca and Kremin and to friends and family members of Maresca, Conrad, Giunta and Kremin for little or no consideration are void;

3.    For an injunction reinstating Braddock as manager and CEO of Zaycon, and an injunction preventing any action to recapitalize, merge or sell Zaycon until such time as Braddock is reinstated as co-manager and CEO of the Company; and

4.    Awarding such other and further relief as is just and proper, including pre-judgment interest, costs and reasonable attorneys' fees pursuant to the Securities Act of Washington.

BRADDOCK'S FIRST AMENDED COMPLAINT - 50
NO. 2:16 cv 1756

1592599.03

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1

2 DATED this 2nd day of February, 2018.

3                                        RYAN, SWANSON & CLEVELAND, PLLC

4                                  By /s/ David L. Tift
                                       Michael Jay Brown, WSBA #9224
5                                      David L. Tift, WSBA #13213
6                                      RYAN, SWANSON & CLEVELAND, PLLC
                                       1201 Third Avenue, Suite 3400
7                                      Seattle, Washington  98101-3034
                                       Telephone: (206) 464-4224
8                                      Facsimile: (206) 583-0359
9                                      brown@ryanlaw.com
                                       tift@ryanlaw.com
10
                                       David G. Trachtenberg, NYSB #1671023
11                                     Leonard A. Rodes, NYSB #1927144
                                       Trachtenberg Rodes & Friedberg LLP
12                                     545 Fifth Avenue, Suite 640
13                                     New York, New York 10017
                                       Phone: 212-972-2929
14                                     Fax: 212-972-7581
                                       dtrachtenberg@trflaw.com
15                                     lrodes@trflaw.com
                                       *Attorneys for Plaintiff Richard Braddock*
16

17

18

19

20

21

22

23

24

25

26

BRADDOCK'S FIRST AMENDED COMPLAINT - 51
NO. 2:16 cv 1756

1592599.03

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1

## CERTIFICATE OF SERVICE

2

I hereby certify under penalty of perjury under the laws of the State of Washington that

3

on this 2nd day of February, 2018, I electronically served the foregoing document to counsel of

4

record for Defendants at the email addresses described below:

5

6

Elizabeth Yingling
Heidi B. Bradley
Genevieve York-Erwin
elizabeth.yingling@bakermckenzie.com
bradleyh@lanepowell.com
yorkerwing@lanepowell.com
***Attorneys for Defendants ZAYCON
FOODS, LLC and MICHAEL GIUNTA
and JANE DOE GIUNTA***

Geana M. Van Dessel
GeanaV@leehayes.com
***Attorney for Defendants FRANK R.
MARESCA and JANE DOE MARESCA,
MIKE CONRAD and JANE DOE
CONRAD and ADAM KREMIN
and JANE DOE KREMIN***

7

8

9

10

11

12

DATED this 2nd day of February, 2018.

13

14

By */s/ David L. Tift*
David L. Tift, WSBA #13213
Michael Jay Brown, WSBA #9224
RYAN, SWANSON & CLEVELAND, PLLC
1201 Third Avenue, Suite 3400
Seattle, Washington  98101-3034
Telephone: (206) 464-4224
Facsimile: (206) 583-0359
brown@ryanlaw.com
tift@ryanlaw.com

15

16

17

18

19

20

David G. Trachtenberg, NYSB #1671023
Leonard A. Rodes, NYSB #1927144
Trachtenberg Rodes & Friedberg LLP
545 Fifth Avenue, Suite 640
New York, New York 10017
Phone: 212-972-2929
Fax: 212-972-7581
dtrachtenberg@trflaw.com
lrodes@trflaw.com

21

22

23

24

25

**Attorneys for RICHARD BRADDOCK**

26

BRADDOCK'S FIRST AMENDED COMPLAINT - 52
NO. 2:16 cv 1756



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1592599.03